## STATE v. PETERSON
## SAME v. ROMANO

(Nos. 997-999 Decided December 30, 1920; 194 Pac. 342)

INTOXICATING LIQUORS—STATUTES—SEARCH AND SEIZURE—SEARCH
WARRANT HELD INVALID—PROBABLE CAUSE TO JUSTIFY SEARCH
WARRANT—PROSECUTING ATTORNEY—POSSESSION OF INTOXICATING
LIQUOR—VALIDITY OF STATUTE—FEDERAL CONSTITUTIONAL PROVI-
SION—AFFIDAVIT FOR SEARCH WARRANT—JUSTICES OF THE PEACE—
JURISDICTION OF JUSTICES OF THE PEACE—CRIMINAL LAW—UNLAW-
FUL SEIZURE OF INTOXICATING LIQUORS.

1. Laws 1919, c. 25, § 26, providing for the issuance of search
warrants for intoxicating liquor on complaint without
expressly requiring the complaint to be sworn to, does
not authorize the issuance of the warrant without any
affidavit, in view of Comp. St. 1910, §§ 6041-6047, re-
quiring complaints for criminal offenses to be verified
and section 6314, requiring the complaint for a search
warrant for stolen goods, etc., to be verified.

2. Laws 1919, c. 25, § 26, requiring search warrants for in-
toxicating liquors to be issued on complaint stating that
the affiant believes, and has good cause to believe, that
liquor is concealed in the place described, authorizes the
making of the complaint on information and belief with-
out any statement of the grounds for the belief, and there-
by violates Const. art. 1, § 4, prohibiting unreasonable
searches and seizures, and providing that no warrant
shall issue but upon probable cause supported by affidavit.

3. Under Const. art. 1, § 4, the existence of probable cause
authorizing the issuance of a search warrant is a judi-
cial question, and cannot be determined by the prosecut-
ing attorney or the prohibition commissioner, as is pro-
vided by Laws 1919, c. 25, § 25, providing for complaint
to such officer and presentation of the matter, if he
deems the showing good and sufficient, to the court which
shall immediately issue the warrant.

4. Under Laws 1919, c. 25, the possession of intoxicating liq-
uor acquired before June 30, 1919, is not unlawful, unless
intended to be used in connection with or for the purpose
of traffic therein.

5. The validity of Laws 1919, c. 25, relative to search war-
rants for intoxicating liquors, must be tested by what the

law authorizes to be done, and not by what has been or can be done thereunder.

6. Const. U. S. Amend. 4, relative to searches and seizures, operates solely on the federal government, its courts and officers, and is not a limitation on the powers of the states.

7. Under Const. art. 1, § 4, providing that no search warrant shall issue but upon probable cause supported by affidavit particularly describing the thing to be seized, a designation of the property to be searched for as intoxicating liquor, without describing the kind, quantity, etc., is insufficient.

8. Laws 1919, c. 25, providing for the issuance of search warrants for intoxicating liquors by any court of competent jurisdiction, does not authorize a justice of the peace to issue such a warrant, and, no such authority being given by statute, the Constitution, or the common law, a justice of the peace has no such power, and the issuance of a warrant by him is null and void.

9. Justices of the peace have only such jurisdiction as is expressly given.

10. Intoxicating liquors and receptacles seized under a void search warrant were properly ordered returned to the person from whom they were taken and suppressed as evidence against him on his timely application therefor.

No. 997.

RESERVED questions from the District Court of Converse County, HON. ERNEST C. RAYMOND, Judge.

Criminal proceedings by the State against Theodore Peterson. Heard upon questions reserved by the District Court of Converse County.

No. 999.

EXCEPTIONS from the District Court of Sheridan County, HON. JAMES H. BURGESS, Judge.

Criminal proceedings by the state against Theodore Peterson and Charles Romano, on questions reserved by the District Court in the Peterson case and on exceptions by the Prosecuting Attorney to rulings in the Romano case.

Both cases were presented at one hearing because of the similarity of the questions involved.

*Harvey, Hawley and Garst,* for Peterson.

The search and seizure clause of the prohibition act is violative of Sec. 4, Art. 1, of the State Constitution; all that is required by Section 26 of the act is that the prosecutor shall show that he believes and has good cause to believe that liquors were stored in certain premises; no oath is required; a verification of information on belief does not constitute probable cause; (State v. Boulter, 5 Wyo. 244; Hollivaugh v. Hehn, 13 Wyo. 276); the jurisdiction of the justice of the peace is limited by statute and does not include the issuance of search warrants; the seizure being unlawful, the liquor should be returned, (10 R. C. L. 933; Weeks v. U. S. 34 Sup. Ct. 341); there is no apparent intention in the law to deprive citizens of the right to possess liquor for their own use, nor that liquor so held should be contraband; an officer may sell intoxicating liquor at judicial sale under attachment or execution, and it may be seized for the owner's debts; (Wildermuth v. Colo. 43 N. W. 889; Nutt v. Wheeler, 30 Vt. 436); an administrator can sell liquor without a license, (Williams v. Troop, 17 Wis. 463), Laws prohibiting sales do not prevent seizure for debts, (State v. Johnson, 38 N. H. 441; Howe v. Stewart, 40 Vt. 145; Fears v. State, 142 Ga. 274); liquor seized under a void law may be replevined, (Cooley v. Davis, 34 Ia., 128; Karr v. Stahl, 5 Kans. 387); prohibitory laws do not apply to sales under judicial process, (17 Ccy. 949); to subject liquors to forfeiture it must be shown that they are held contrary to law, (State v. Robinson, 49 Me. 285; State v. Int. Liq. 40 Ia. 95; Fries v. Porch, 49 Ia. 351); prohibition of sales does not disregard their property character (Dornam v. State, 34 Ala. 216); liquors legally acquired prior to the date the prohibitory act became effective are not subject to seizure; (People v. Wilson 171 N. W. 564; Weeks v. U. S. supra); in the foregoing case there was a seizure of lottery tickets without a warrant and it was held that there was not authority to use the tickets as evidence against defendant.

*W. L. Walls,* Attorney General, and *T. Blake Kennedy,* for the State in Case No. 997.

The first reserved question relates to the constitutionality of Sec. 26, Chap. 25, Laws 1919; two vital questions are presented; *first,* is an affidavit or complaint for a search warrant, sufficient if made upon belief or reason for belief of affiant, and if sufficient is it within the province of the Prosecuting Attorney or Commissioner to determine the element of probable cause? *Second,* if an affidavit, based upon belief or reason to believe is sufficient and it is not within the province of the prosecutor or commissioner to determine the element of probable cause, it would clearly be the function of the court to determine the element of probable cause, in which event does the act in controversy provide for such determination? An affidavit as a basis for a search warrant, made upon belief is sufficient; (Lincoln v. Smith, 27 Vt. 328; State v. Hobbs, 39 Me. 212; Gray v. Kimball, 42 Me. 299; State v. Plunkett, 64 Me. 534, 537; State v. Divine, 13 Atl. 128; Com. v. Int. Liq. 105 Mass. 595): *what seems to be considered the ruling case upon this point is found in the Indiana reports.* (Rose v. State, 171 Ind. 662), the rule is recognized in Iowa, (Koch v. Dist. Ct. 150 Ia. 151). State v. Boulter, 5 Wyo. 245 is readily distinguishable from the case at bar; the point decided in that case was that the Prosecuting Attorney endeavored to disregard the finding of an examining magistrate as to the probable cause, and to himself determine the question of probable cause by filing complaint on information and belief charging a higher degree of crime; but, a complaint on information and belief is sufficient to invoke the powers of a tribunal in determining the question of probable cause, (Lowery v. Gridley, 30 Conn. 450); the same rule is followed in (Dupree v. State, 102 Tex. 455). It is reasonably clear from the language of Sec. 25 of the prohibitory act that it is the province of the court to determine the question of probable cause; our statute, unlike that of Massachusetts, does not require that the warrant recite the find-

ing of probable cause by the court. The jurisdiction of a justice of the peace to issue a search warrant does not appear to be involved in this case; the question of the right of defendant to a return of the liquor cannot be determined upon reserved questions; the question of discrimination attempted to be raised, in that protection from search is given to private residences, is believed to be without merit; the act protects all persons equally who reside in private dwellings from search and seizure, except under certain circumstances.

*W. L. Walls, M. L. Blake, and T. Blake Kennedy,* for the State in case No. 999.

The exceptions by the Prosecuting Attorney are submitted for review under Sect. 6242-6245 C. S. 1910; exceptions were taken to an order of the trial court directing a return of liquor seized from defendant under the prohibition act; the basis of the ruling was that Secs. 25 and 26 of the prohibition act are in conflict with Art. 1, Sec. 4, State Constitution, relating to search warrants; an affidavit for a search warrant made upon belief or cause to believe of the affiant, is sufficient. (Lincoln v. Smith, 27 Vt. 328; State v. Hobbs, 39 Me. 212; Gray v. Kimball, 42 Me. 299; State v. Plunkett, 64 Me. 534-537; Com. v. Int. Liq. 105 Mass. 595; The ruling obtained in Indiana, Rose v. State, 171 Ind. 662; Koch v. District Court, 150 Ia. 151); the language of Sec. 26 is in fact almost identical with Secs. 6314 C. S. 1910. The Boulter case is not in point; under a similar statute it is held in Connecticut that the intention was to authorize a justice to define probable cause, (Lowery v. Gridlet, 30 Conn. 450). The constitutional provisions does not restrict the power of determining probable cause to the courts; (Dupree v. State, 102 Tex. 455). A reasonable interpretation of Sec. 25 of the act would indicate an intention that court order determine the question of probable cause. The use of the word "shall" as found in the section does not necessarily deprive the court the

power or right to determine the element of probable cause; as it may be considered as directory only and not mandatory, 6028 C. S. 1910; courts will not lightly regard an act as unconstitutional. This statute does not require the warrant to recite that there has been a finding of probable cause by the court as is required in some states.

(Com. v. Int. Liq. 108 Mass 19); the prohibition act does not expressly confer jurisdiction upon justices of the peace to issue search warrants; the language used is "any court of competent jurisdiction;" it is true that no express authority is delegated to the Legislature by the Constitution to vest courts of the justices of the peace with power to issue search warrants; a strict interpretation of Section 22, Art. V of the Constitution would seem to exclude the power; but numerous examples may be found where justices of the peace do perform duties either by direction of the statutes, or without it, which do not come within the strict letter of the provision defining the jurisdiction of such court, for example, jurisdiction and forcible entry and detainer; sitting as examining magistrates in criminal cases; the issuance of process for the apprehension of fugitives from justice, 6046 C. S. 1910; none of which are expressly delegated by the constitutional provision referred to; the issuance of a search warrant is intended to assist in law enforcement, quite similar to the function exercised as an examining magistrate. The following cases, however, seem to limit the jurisdiction of the justices of the peace: (Bowers v. Green, 2 Ill. 42; Robinson v. Harlin, 2 Ill. 237; Evans v. Pierce, 3 Ill. 468; White v. Wagar, 185 Ill. 195, 50 L. R. A. 60;) the case of Weeks v. U. S. 232 U. S. 383, is cited as an authority for the return of the liquors seized. This case pertains to the seizure of documents and not to property expressly declared contraband, the possession of which was made illegal by statute; the seizure of liquor under a valid search warrant does not affect the court's jurisdiction nor entitle the owner to recover possession, (Ferguson v. State, 70 Ark. 94), the same rule is followed in State v. Plunkett.

Section 7 of the Prohibition Act declares liquor unlawfully manufactured, possessed or transported to be contraband; the return of the liquor was unauthorized, as was the supression of evidence resulting from such return, (State v. Flynn, 36 N. H. 64).

*R. G. Diefenderfer,* for Defendant in Case No. 999.

Section 25 of the act authorizes the issuance of a search warrant without an affidavit and permits any affidavit made to be verified upon information and belief; it does not require a showing of probable cause before the issuance of the search warrant; the act is lacking in uniform operation; the act does not confer jurisdiction upon justices of the peace, neither does the general statutes, the constitution nor the common law confer jurisdiction to issue search warrants; the complaint is insufficient in any event and the warrant issued is void; the section permits the issuance of search warrants without affidavits or showing of probable cause and violates Sec. 4 of Art. 1 of the Constitution. (State v. Boulter, 5 Wyo. 236, Salter v. State, 102 P. 719), citing numerous authorities; warrants for arrest and for search are within the same constitutional provisions; on principle there can be no distinction made between them. (24 R. C. L. 708; Reg. v. Walker, 13 Ont. 83; Rex v. Karr, 11 Ont. 517; State v. McGahet, 12 N. D. 535). The Indiana case of Rose v. State, 171 Ind. 662 relied upon by the state cannot be considered an authority because the rule announced here in Boulter v. State, supra, is otherwise; the statute, Sec. 25, delegates the power of delivering "probable cause" to the Prosecuting Attorney and Commisioner and if he deems the showing sufficient, makes it the duty of the court to issue its warrant; this is entirely at variance with settled principles which make it the province of the court to determine probable cause, (24 R. C. L. 707; DeGraff v. State, 103 Pac. 538; Kniseley v. Ham, 136 Pac. 427; Chipman v. Bates, 15 Vt. 51). It is the apparent contention of the state that the Legislature may endow any person with the

power of determining probable cause, but the foregoing authorities are adverse to that contention. The case of Lowery v. Gridley, supra, cited by the state as a leading authority is predicated upon the principle set forth therein that "it is better that innocent men should suffer temporary inconvenience than that criminals should escape punishment," a doctrine entirely foreign to our system of laws. The suggestion that the provision of Section 25 with reference to the issuance of search warrants is directory and not mandatory is without foundation under the authority of State v. Conwell, 96 Me. 172; which held such language to be mandatory. A charge made upon information and belief affords no protection to a person unjustly accused; the act is without uniform operation; private dwellings are expressly exempted from the operation of a search warrant; the Legislature is without power to make any such distinction in the operation of search warrants; justices of the peace have no jurisdiction to issue search warrants; the power of a justice of the peace is limited to what is conferred on him by statute, (24 R. C. L. 706; 12 Cyc. 201; White v. Wagar, 57 N. E. 26). The act uses the term "any court of competent jurisdiction;" the constitutional provision fixing the powers of justices of the peace, Sec. 22, Art. V, failed to reveal any power in such magistrates to issue search warrants except for stolen goods; the common law does not confer jurisdiction upon a justice of the peace to issue search warrants, (Com. v. Hines, 145 Mass, 182) except as to stolen goods; (Re Swan, 150 U. S. 637). But, if the search and seizure provisions of the act are constitutional and a justice has power to issue, the warrant here is void because not in accordance with the statute; it does not describe the things to be searched for nor the offense, in relation to the things to be searched for; (22 Cyc. 344.) The warrant being void, and defendants right to be secure having been violated, it was proper for the court to place him in *statu quo* by returning his goods, (People v. Marxhausen, 171 N. W. 557; Weeks v. U. S. 232 U. S. 383). In-

toxicating liquors unlawfully held are not made contraband by the prohibition act, (Sec. 27, Chap. 25, Laws 1919) clearly shows defendant was entitled to a suppression of the evidence in any event and an order returning all contraband goods.

BLYDENBURGH, Justice.

These cases come to this court from different district courts, and under different statutory proceedure, but involve in part at least the same questions. The Peterson case was ordered sent here from the district court of the 6th Judicial District, in and for Converse county, by E. C. Raymond, the then presiding judge, upon difficult constitutional questions, under the provisions of Chapter 327, Sections 5136 to 5138, Wyoming Compiled Statutes 1910, and the Romano case comes to this court by exceptions of the prosecuting attorney of Sheridan county to a certain decision of James Burgess, Judge of the 4th district in said case, as provided by Sections 6243-6245, Wyoming Compiled Statutes 1910. In each of these cases, the facts are practically the same. A complaint sworn to on information and belief, or to quote the language of the affiant: "has reason to believe and does believe that intoxicating liquors are possessed," etc., being filed with a justice of the peace, and thereupon the justice issuing a search warrant to the sheriff of the county, who proceeded under the search warrant to search the premises mentioned in the warrant and seized receptacles supposed to contain intoxicating liquor and made return to the justice of the peace. There was then filed with the justice a criminal complaint against the person in whose premises the alleged intoxicating liquor was in each case found, charging him with the unlawful possession of intoxicating liquor. Thereafter an application or petition was made in each case to the district court of the proper county for the return of the property seized under the search warrant, and the suppression of the same as evidence, alleging that the entire proceed-

ure in seizing it by virtue of the alleged search warrant was null and void and of no legal effect, which upon hearing resulted in the Peterson case in the judge submitting the reserved questions, and in the Romano case in the judge granting the application and issuing an order that the property seized be returned to the defendant and suppressed as evidence. As the constitutionality of the search and seizure provisions of Chapter 25 of the Session Laws of 1919, which is generally known as the Prohibition or Prohibitory Act is involved in both cases, this court ordered that they should be argued together, and they were so argued. But there are several matters involved in the Romano case which are not involved in the reserved questions in the Peterson case, in which we are only concerned in answering the questions reserved.

These questions reserved in the Peterson case are:

1. Is the provision of Section 26, of Chapter 25 of the Session Laws of Wyoming, 1919, which permits a warrant for search and seizure to be issued upon a complaint verified by a person that he ''believes and has good cause to believe that such liquor is there concealed'', in contravention and violation of Section 4, of Article 1 of the Constitution of the State of Wyoming, and of the 4th and 5th amendments to the Constitution of the United States of America.

2. Is the complaint and affidavit, made, signed and verified by F. L. Crabbe on the 21st day of August, 1919, and on that day filed in the justice court of H. R. Mewis in said action, in contravention and violation of Section 4, of Article 1 of the Constitution of the State of Wyomin, and of the 4th and 5th amendments to the Constitution of the United States of America.

Section 26 of Chapter 25 of the Session Laws of 1919 referred to in the above reserved questions is as follows:

''No warrant for search shall be issued as herein provided unless the complaint upon which the same is based

shall describe the house or place to be searched, the things to be searched for and alleging substantially the offense in relation thereto and that the affiant believes and has good cause to believe that such liquor is there concealed; Provided, however, that any description that will enable the officer to find the place to be searched shall be deemed to be sufficient. A warrant for a search and seizure in the following form shall be sufficient:

THE STATE OF WYOMING ⎫ ss.
County of........................................ ⎬
                                              ⎭

To (stating title of officer to whom directed) GREETING:

Whereas there has been filed with the undersigned a complaint of which the annexed is a true copy:

You are therefore commanded in the name of the State of Wyoming together with the necessary and proper assistance to enter (here describe the place designated in the affidavit to be searched) and there diligently search for said intoxicating liquors and implements described in said complaint; and that you bring the same or any part thereof found in such search forthwith before me to be disposed of and dealt with according to law.

Given under my hand this ......... day of ...................... 19.....

------------------------------------------------------------------

                                                Official Title.

Any officer of the law whose duty it is to enforce this Act may seize such liquor and the receptacles and shall forthwith make a return of such seizure and the place where such liquor and receptacles are retained by him upon the warrant and the same shall be held by such officer subject to the order of the court.''

That part of the order to which exceptions were taken in the Romano case is:

  ''2.   That the said application of defendant be, and the same is hereby granted, and the Sheriff of Sheridan coun-

ty, Wyoming, is hereby ordered to forthwith return to the above named defendant, Charles Romano, all of the alleged liquor in its containers which was seized while in the possession of defendant on July 10, 1919, by said sheriff, which said alleged liquor is being held by the said sheriff pursuant to the requirements of Chapter 25, Session Laws of Wyoming, 1919, to all of which the said county and prosecuting attorney, for and on behalf of the State of Wyoming, then and there duly excepted, which exception is by the court allowed.

''3. That all evidence relating to the said liquor be, and the same is hereby, suppressed as against this defendant, to which ruling the said county and prosecuting attorney, for and on behalf of the State of Wyoming then and there duly excepted, which exception is by the court allowed.''

In order that the Search and Seizure provisions of the Prohibition Act and especially Section 26, referred to in the reserved questions may be fully comprehended, we shall also consider Section 25 of Chapter 25 with it. This section reads as follows:

''If any person make a sworn complaint or affidavit to any prosecuting attorney or the commissioner that he has reason to believe and does believe that any intoxicating liquors are being manufactured, sold, possessed, transported, furnished or given away contrary to law or that any such liquors are stored temporarily or otherwise in any depot, freight house, express office, or in any other building or place for the purpose of being sold, furnished, possessed or given away contrary to the provisions of this Act it shall be the duty of such officer to present such matter, if he deems the showing good and sufficient upon his own complaint to any court of competent jurisdiction and such court shall immediately issue its warrant to the proper officer commanding him to search the premises described and designated in such complaint and warrant

and if such liquors are there found, to seize the same together with the vessels in which it is contained and all the implements and furniture used and kept for such illegal selling, furnishing, giving away or storing of such liquors and then to safely keep the same and make immediate return on said warrant. Such liquors, furniture, vessel and implements used in such manufacturing, keeping or selling shall be held subject to the order of such court to be used as evidence in the prosecution of any case for the violation of this Act; Provided, that no warrant shall be issued to search a private dwelling occupied as such unless some part of it is used as a store, storage room, shop, hotel or boarding house or for any other purpose than a private residence, or such residence is a place of public resort or where intoxicating liquors are sold, kept for sale or given away in violation of this Act."

Section 4, Article 1 of the Wyoming Constitution, which it is claimed these provisions of the Prohibition Act violate is as follows:

"Sec. 4.  SECURITY AGAINST SEARCH.  The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated, and no warrant shall issue but upon probable cause, supported by affidavit, particularly describing the place to be searched or the person or thing to be seized."

This is the provision of the Constitution against unreasonable search and seizure which was adopted in England to protect against the wrongs which had arisen under what was called "General Warrants", was adopted as the 4th amendment of the Constitution of the United States, and appears in all state constitutions in slightly varying language.  The 4th amendment to the Constitution of the United States is as follows:

"The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches

and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized."

Our constitution is some stronger in that it uses "affidavit" instead of "oath or affirmation"; the word "affidavit" requiring the matter to be in written form.

This provision against unreasonable search and seizure has been considered one of the fundamental props of English and American liberty of the individual citizen and to be most sacredly observed, giving rise to the expression that a "man's house is his castle" designed to prevent violation of his private security in property, or the unlawful invasion of the home of the citizen by the officers of the law acting under legislative or judicial sanction, and to give remedy against such usurpations. (Adams v. New York, 192 U. S. 585, 24 Sup. Ct. 372, 48 U. S. (L. Ed.) 575.) The framers of the Constitution "sought to provide against any attempt by legislation or otherwise to authorize, justify, or declare lawful any unreasonable search or seizure. It was intended to operate on legislative bodies so as to render ineffectual any effort to legalize by statute what the people expressly stipulated could not in any event be made lawful; upon executives so that no law violative of this constitutional inhibition should ever be enforced; and upon the judiciary so as to render it the duty of the courts to denounce as unlawful every unreasonable search and seizure; whether confessedly without any color of authority or sought to be justified under guise of legislative sanction." (24 R. C. L. 704).

It is contended that the search and seizure provisions of the Prohibitory Act is violative of Section 4, Article 1 of the Wyoming Constitution for the reasons, 1. That the statute provides for and authorizes the issuance of a search warrant without any affidavit. 2. It permits any affidavit made to be verified upon information and belief.

3. It does not require any showing of probable cause to be made before the issuance of the search warrant. 4 It vests the matter of the determination of probable cause in the prosecuting attorney and not in the court.

It is evident from reading Sections 25 and 26 of the Act that it is intended that only the prosecuting attorney and the prohibition commissioner can make the complaint upon which a search warrant is to be issued, and this is admitted and stated in the brief on behalf of the state. A good deal of what is contained in Section 25 relates to the sworn complaint or affidavit which may be made by "any person to any prosecuting attorney or the commissioner." Then the commissioner or the prosecuting attorney "if he deems the showing good and sufficient, shall present the matter upon his own complaint to any court of competent jurisdiction and such court shall immediately issue the warrant, etc." Section 26 refers more particularly to what the complaint of the prosecuting attorney or commissioner shall contain. And while the act does not in so many words say that the complaint shall be sworn to, in view of the fact that all complaints for criminal offenses are required to be verified, (Sec. 6041 to 6047, Wyoming Compiled Statutes, 1910), and also the complaint for a search warrant for stolen goods, etc., (Sec. 6314, Wyo. Comp. Stat., 1910), we doubt if any court would consider any complaint that was not sworn to, a complaint such as is meant by this statute, so as to be sufficient to compel the issuance of a search warrant. We do not therefore consider the first reason or grounds stated, that the statute authorizes the issuance of a search warrant without any affidavit well taken. Section 26 does provide that the complaint of the prosecuting attorney or prohibition commissioner can be made upon information and belief, and does not require any statement of the grounds for the belief. The question whether an affidavit on information and belief complies with the requirements

of Section 4, Art. 1 of the Constitution is thus fairly pre-
sented. The same provision of the Constitution protects
against unreasonable arrest and search warrant for prop-
erty, and the interpretation placed thereon as to the char-
acter of the affidavit in case of arrest of the person applies
equally as to search and seizure of goods. In a great ma-
jority of the states, as well as the courts of the United
States, it has been held that an affidavit on mere belief
does not fulfill the requirements of the Constitution in
this regard, although there are a few decisions which hold
otherwise. It is generally held that an affidavit is not
sufficient if it is made on information and belief and is not
corroborated or supported in any way. 24 R. C. L. 708,
although there are some cases which hold to the contrary.
In the case of Johnson v. U. S., 87 Fed 187, 30 C. C. A. 612,
the court on a demurrer to the information, discussing
the affidavit with reference to the 4th amendment to the
Federal Constitution, said:

"The affidavit on which the information was based was
wholly insufficient to warrant the arrest and trial of the
plaintiff in error, and is altogether too general in terms
as to the offense against the United States said to have
been committed; and it shows no knowledge, information,
nor even belief on the part of the affiant as to the guilt
of the party charged, beyond the bare statement that
'there is probable cause to believe that the said offense
was committed by P. T. Johnson.' However false the affi-
davit may be, it would be next to impossible to assign and
prove perjury upon it."

In U. S. v. Tureaud, (C. C.) 20 Fed. 621, the law with
regard to the sufficiency of an affidavit upon which an
information can lawfully be based is fully considered and
discussed on principle and authority ,and therein it is
held that "the probable cause supported by oath or the
affirmation prescribed by the fundamental law of the
United States, sufficient to base an information upon, is

the oath or the affidavits of those persons who of their own knowledge depose to the facts which constitute the offense." In U. S. v. Polite, 35 Fed. 59, it is held that "Informations must be based on affidavits which show probable cause arising from the facts within the knowledge of the parties making them, and that mere belief is not sufficient." Tested by these authorities, the affidavit in the present case was fatally defective."

In the case of the State v. Gleason, 32 Kans. 245, 4 Pac. 363, a county attorney had verified a complaint for violation of the prohibitory liquor law of that state upon information and belief under a statute which read as follows:

"If the county attorney of any county shall be notified by an officer or other person of any violation of any of the provisions of this act, it shall be his duty forthwith to diligently inquire into the facts of such violation, and if there is reasonable ground for his instituting a prosecution, it shall be the duty of such county attorney to file a complaint in writing before some court of competent jurisdiction, charging the suspected person of such offense, and shall verify such complaint by affidavit; but it shall be sufficient to state in such affidavit that he believes the facts stated in such complaint to be true." The court held this statute to be violative of the provisions of the constitution of that state which was the same as the 4th amendment to the Constitution of the U. S., and said:

"So long as this section is in force, the principles therein declared are to remain absolute and unchangeable rules of action and decision. The legislature cannot infringe thereon, and the courts must yield implicit obedience thereto. If no warrant shall issue but upon probable cause supported by oath or affirmation, the support must be something more than hearsay or belief. Where a person or officer states upon oath 'that the several allegations and facts set forth in the foregoing information are

true, as he has been informed and verily believes,' he may have no knowledge of or information upon the subject, except mere hearsay, and yet he can conscientiously make such declaration. (Atchison v. Bartholow, 4 Kans. 124; Thompson v. Higginbotham, 18 Kans. 42). * * * If a warrant, in the first instance, may issue upon mere hearsay or belief, then all the guards of the common law and of the bill of rights of our own constitution, to protect the liberty and property of the citizen against arbitrary power, are swept away. There is no necessity for going so far, and the constitution warrants no such conclusion. The expressions of the bill of rights are very plain and very comprehensive, and cannot be misunderstood. The oath or affirmation of a complaint or information upon which a defendant is arrested in the first instance, must set forth that the allegations and facts therein contained are true. (See dissenting opinion of Cranch, J., in the case of Ex Parte Burford, 3 Cranch 447; The State v. J. H., 1 Tyler 444; Connor v. Commonwealth, 3 Binn. 38; Elsee v. Smith, 1 D. & R. Rep., K. B. 97; The State v. Mann, 5 Ired. 45. See also the People v. Heffron, Sup. Ct. (Mich.) 19 N. W. Rep. 170; United States v. Tureaud, U. S. Circut Ct., E. D. (La.), 20 Fed. Rep. 621).'' The same is held in State v. McGelhey, 12 N. D. 535, 97 N. W. 865, volume 1, Ab. and Eng. Ann Cas., page 650; 97 N. W. 865, the court saying:

''No authority is found in this statute for the issuance of the search warrant unless an affidavit is presented to the court 'stating or showing that intoxicating liquor, particulaly describing the same, is kept for sale.' The affidavit presented to the court in this case did not state or show the required facts, but merely asserted that the state's attorney was informed and believed that the facts did exist. The affidavit is uncorroborated. It does not give the name of the person furnishing the information; makes no statement as to where or how the information and belief was obtain-

ed, or on what information his belief was founded, or whether it was such information as would inspire belief in the mind of a less credulous person. It is mere hearsay and opinion. Judge Cooley, for the Supreme Court of Michigan, thus characterized this form of accusation: 'Charges are not verified by an affidavit that somebody is informed and believes they are true. This is mere evasion of the law. The most improbable stories may be believed of any one, and the man most free from any reasonable suspicion of guilt is not safe if he holds his freedom at the mercy of any man, miles off, who will swear that he has been informed and believes in his guilt. It is easy to tell falsehoods, and those who are least fitted to judge of their credibility are generally the very persons who will believe them because they are told. But to substantiate charges, within the meaning of the law, evidence is required, and not merely suspicions or information or beliefs.' (Swart v. Kimball, 43 Mich. 451, 5 N. W. Rep. 635). This court, in Kneppler v. Red River Valley Nat. Bank, 8 N. Dak. 411, 79 N. W. Rep. 781, said: 'As the application for the arrest is an ex parte proceeding, and as it is in derogation of personal liberty, the least that can be required is that the applicant make an undoubted prima facie case.' * * * * Upon the plainest rules of statutory construction, an affidavit for a search warrant is required to be made by one with knowledge of the facts and by positive and unqualified statements of their existence. This is shown by the fact that the legislature, in the same clause of the statute, authorized the issuance of an injunction and search warrant in one action, and at the same time, and provides that when the affidavit or complaint for injunction is made by the state's attorney, attorney general, or his assistant, it may be made on information and belief, but omits the affidavit for search warrant from mention in the proviso; thus impliedly declaring that information and belief will not support a search warrant. (Suth. Stat. Const. Sections 325, 327). It may well be doubted whether it is within the power of the legislature to authorize the issuance

of search warrants upon mere affidavit or complaint made
upon information and belief. The Constitution, section 18,
declares:· ''A right of the people to be secure in their
persons, houses, papers and effects, against unreasonable
searches and seizures, shall not be violated; and no warrant
shall issue but upon probable cause, supported by oath or
affirmation, particularly describing the place to be searched
and the persons and things to be seized.' Under similar
guaranty, the Supreme Court of Illinois has held it beyond
the power of the legislature to authorize a search warrant
to issue upon a complaint or affidavit which is merely hear-
say.'' (Lippman v. People, 175 Ill 101, 51 N. E. 872). A
search warrant issued in a liquor case on an affidavit sworn
to by the attorney general on information and belief was
held wholly void in State v. Patterson, 13 N. D. 70, 99 N. W.
67 and that mere belief is wholly insufficient to authorize
issuance of a search warrant was held in Early v. People,
117 Ill. App. 608. The provisions of the constitution of the
State of Illinois in regard to search and seizure is exactly
the same as that of Wyoming, and the Supreme Court of
that state in Lippman v. People, 175 Ill. 101, 51 N. E. 872,
in construing its application to a statute of that state, said:

''This section of our constitution is identical with the
fourth amendment to the constitution of the United States,
except that it substitutes the word 'affidavit' for 'oath or
affirmation.' It is a step beyond the constitution of the
United States, in requiring the evidence of probable cause
to be made a permanent record in the form of an affidavit;
otherwise, it is the same. It has been uniformly held, wher-
ever the question has arisen under a statute or constitution
containing such provision, that the oath or affirmation must
show probable cause arising from facts within the knowl-
edge of affiant, and must exhibit the facts upon which the
belief is based, and that his mere belief is not sufficient.
(U. S. v. Tureaud, 2 Fed. 621, Johnston v. U. S., 30 C. C. A.
612, 87 Fed. 187). The constitutional provisions on this
subject had their origin in the abuse of executive authority,

and their design is to substitute judicial discretion for arbitrary power, so that the security of the citizen in his property shall not be at the mercy of individuals or officers. The general statute authorizing search warrants, contained in the criminal code, fully recognize this rule by the requirement that the judge or justice of the peace shall be satisfied that there is reasonable cause for the belief of the affiant, before he shall issue his warrant. Wherever a statute requires probable cause, supported by oath or affirmation, the complaint must set forth facts, and cannot rest on mere belief, which will not satisfy the requirement. (Blythe v. Tompkins, 2 Abb. Prac. 468; People v. Heffron, 53 Mich. 527, 19 N. W. 170, ex parte Dimig, 74 Cal. 164, 15 Pac 619). A search warrant can only be granted after a showing made before a magistrate, under oath, that a crime has been committed; and the law, in requiring a showing of probable cause, supported by affidavit, intends that facts shall be stated which shall satisfy the magistrate that suspicion is well founded. The mere expression of opinion, under oath, is no ground for the warrant, except as the facts justify it. Cooley, Const. Lim. (4th Ed.) 372: 'The warrant is not allowed to obtain evidence of an intended crime, but only after lawful evidence of an offense actually committed.' (Id. 374). The act now under consideration does not even require an affidavit that any offense has been committed, and an affidavit which fulfills its conditions belongs to a class universally condemned by every authority, when used to disturb a citizen in the security guaranteed him by the constitution. It requires nothing but the belief of the party making the affidavit, and, as he is not required to state any fact or satisfy the magistrate that there is reasonable ground for his belief, he may just as well swear by wholesale, according to the printed form, to 400 bottles and 40 kegs, as to his affidavit to the facts of a particular case. The act attempts to transfer the judicial discretion, which the constitution intended should be exercised by the magistrate, from that officer to the party making the affidavit.

The vesting of such discretion in the magistrate has been the main purpose of constitutional provisions of this character, while this act destroys the protection secured, and permits the affiant to pass upon the question of probable cause. The search warrant appears to be intended as a means of collecting evidence." That an affidavit on information and belief will not comply with the provisions of Sec. 4, Art. 1 of the Constitution of the State of Wyoming was stated in this court in State vs. Boulter, 5 Wyoming 236, 244, 245, 39 Pac. 883-884, where Judge Conway, speaking for this court, said:

"Another consideration that should not be overlooked is that the information is verified by the prosecuting attorney on information and belief. And there is no finding or showing or probable cause to believe the defendant guilty of the degree of offense charged. The information verified on information and belief does not of itself constitute 'probable cause supported by affidavit.' (See Const. Wyo. Sec. 4, Art. 1, U. S. v. Bollman and Swartout, 1 Cranch C.C. Rep. 373; State v. Gleason, 32 Kans. 345). The knowledge of the prosecuting attorney is generally founded on information and belief. In the nature of things he can have actual personal knowledge of but a small portion of the crime committed in his county. His information upon which his belief is founded is sworn to by no one. No one is criminally liable if it should prove to be false and malicious. Such verification furnishes no safeguard against unfounded and vexatious arrests." In the briefs filed upon behalf of the state in this case, it is attempted to support the proposition that an affidavit on information and belief is sufficient, principally by the case of Rose v. State, 171 Ind. 662, 87 N. E. 103, and calls this the ruling case on this point. An examination of this case shows that it is based upon the case of Lowrey v. Gridley, 30 Conn. 450, which the state calls the leading case on the question of probable cause, which case we will consider later. And also, this Indiana case is based on the fact that in that state it had been held that a

warrant for an arrest for crime may issue on an affidavit based on information and belief, contrary to the weight of authority and the express doctrine of this state as shown in the Boulter case, supra.

In U. S. v. Tureaud, 20 Fed. 621, the rule which governs U. S. courts and also applies to "probable cause" is thus stated:

"The rule which must govern this court, and all magistrates who authorize arrests under the constitution of the United States, as to the foundaion for the issuance of warrants, is uniform, and is thus stated by Mr. Justice Bradley in the matter of a rule of court upon the subject, (3 Woods, 502):

'After àn examination of the subject, we have come to the conclusion that such an affidavit does not meet the requirements of the constitution, which, by the fourth article of the amendments, declares that the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated; and that no warrants shall issue but upon probable cause, supported by oath or affrmation describing the place to be searched and the persons to be seized. It is plain from this fundamental enunciation, as well as from the books of authority on criminal matters in the common law, that the probable cause referred to, and which must be supported by oath or affirmation, *must be submitted to the committing magistrate himself, and not merely to an official accuser,* so that he, the magistrate, may exercise his own judgment on the sufficiency of the ground for believing the accused person guilty; and this ground must amount to a probable cause of belief or suspicion of the party's guilt. In other words, the magistrate ought to have before him the oath of the real accuser, presented either in the form of an affidavit or taken down by himself on a personal examination, exhibiting the facts on which the charge is based, and on which the belief or suspicion of guilt is founded.'

The rule which was established was that the warrant should issue 'only upon probable cause' supported by affirmation of the person making the charge, in which should be stated *the facts within his own knowledge* constituting the grounds of such belief or suspicion.' "

Under this statute, where is vested the determination of "probable cause" required by the constitution, Section 25 provides that anyone may make complaint to the prosecuting attorney and the prohibition commissioner of his belief of the violation of the act and the storage of liquor, temporarily or otherwise, and if such officer "deems the showing good and sufficient" he shall present the matter on his own complaint to any court of competent jurisdiction, and such court shall *immediately* issue a search warrant. This evidently puts the determination of "probable cause" upon the prosecuting attorney or the commissioner and upon the finding of "probable cause" by such officer and his acting thereon by presenting his complaint to a court of competent jurisdiction, the statute commands the court immediately, without any hearing, to issue its warrant. The state argues that this may be legally done, and that the legislature may confer the power to find "probable cause" upon the prosecuting attorney and quotes from the case of Lowrey v. Gridley, 30 Conn. 450, which it calls the leading case on this question. It may be the leading case, holding that the prosecuting attorney can be designated as the officer who has the finding of "probable cause," but this is against the great weight of authority and all the best reasoning. The finding of "probable cause" is a judicial question and cannot be determined by an administrative or executive officer. "It is the judge or magistrate before whom the complaint is filed who determines the question of existence of 'probable cause' for the issuance of a search warrant, and not the person who files and verifies the complaint and asks for the warrant." (24 R. C. L. 707). "Magistrates must determine whether there are sufficient grounds to require the issuance of the warrant." (Chipman v.

Bates, 15 Vt. 51-54, 40 Am. Dec. 663). "It is the judge or
magistrate before whom the complaint is filed who deter-
mines the question of the existence of 'probable cause,' for
the issuance of the search warrant, and not the person who
files and verifies the complaint and asks the issuance of the
same." (Kniseley v. Ham, 39 Okla. 623, 136 Pac. 427, 49
L. R. A. (N. S.) 770). In DeGraff v. State, 2 Okl. Cr. 519,
103 Pac. (Okl.) .538, the court said: "This necessarily
makes the issuance of a warrant of arrest a judicial act,
to be exercised by the officer who is clothed by law with the
power and authority to determine as to whether or not the
warrant should be issued, and this discretion must rest upon
facts verified by oath or affirmation.  The questions of
probable cause and of reasonable ground to believe that an
offense has been committed are addressed alone to the judg-
ment of such officer, and their determination cannot, by
statute, be vested in the person who verified the facts from
which these opinions, conclusions, or deductions are drawn.
Any other construction would reduce this constitutional
guaranty to an absurdity, and would violate its letter and
spirit and defeat its purpose.  *   *   *   *   The law is
clearly stated in the syllabus, which is as follows: '(1) An
affidavit made solely upon information derived from others
whose names are not given, by a person who swears that he
has good reason to believe, and does believe, that a certain
person, naming him, has committed an offense against the
law, describing it, does not meet the requirements of article
4 of the amendments to the Constitution of the United
States.  (2) The probable cause mentioned in that article
which is to be supported by oath or affirmation, and upon
which alone a warrant can issue, must be submitted to the
committing magistrate, who must judge of the sufficiency
of the ground shown for believing the accused party guilty.
(3) The magistrate, before issuing a warrant, should have
before him the oath of the real accuser to the facts on which
the charge is based, and on which the belief or suspicion of
guilt is founded." In Commonwealth v. Leddy, 105 Mass.

381-383, it is said: "The facts and circumstances are required to be stated, not as tending to convict the defendant when put upon his trial, but to satisfy the magistrate that there is sufficient cause for issuing a search-warrant, and to enable him to state with reasonable propriety that probable cause has been shown to him for issuing it.  *  *  *  * and as the magistrate is obliged to make an official statement that it appears to him that probable cause has been shown for issuing the search warrant, it would be his duty to inquire into the character of the report, and ascertain the degree of its credibility."

In Rex·v. Kehr, 11 Ont. L. Rep. 517, 6 A. & E. Ann. Cases, 612, the court said: "In the present case the magistrate has to be satisfied by information upon oath, not only that the informant suspects and that he has just and reasonable ground to suspect, but also setting forth the causes of suspicion in order that he may be able to judge whether the case is a proper one to grant his warrant for search or not; in short, he must exercise a judicial discretion upon the facts brought before him." In Salter v. State 5 Okl. Cr. 464; 25 L. R. A. N. S. 60, 102 Pac. (Okla.) 719, with reference to the claim that the prosecuting attorney can determine the "probable cause," and an affidavit was sufficient, it was said: "This contention is obviously without merit. The error of the argument is so self-evident as to require only a passing notice. Counsel overlooks the fact that by the adoption of the fourth amendment of the federal constitution the procedure by information lost its perogative function or quality. It could not thereafter be the vehicle of preferring any arbitrary accusation. (U. S. v. Tureaud, supra). The constitutional provision in the Bill of Rights is but a reiteration of this essential safeguard of the liberty and security of the citizen against the arbitrary action of those in authority. Such pernicious practice may suit the purposes of despotic power, but is alien to the pure atmosphere of political liberty and personal freedom. The constitution expressly requires a showing of cause before

a warrant shall issue, and the constitutional safeguards for security and liberty cannot in this manner be abrogated or abridged. They must stand as adopted by the people.''

The Connecticut case of Lowrey v. Gridley, supra, which was relied upon by the state on this point, like the Indiana case of Rose v. State, was decided as it was because it had not been the custom in that state to require anything stronger to arrest one charged with crime than the information of the prosecuting officer on his information and belief, which is shown by the Boulter case, supra, is contrary to the doctrine approved and followed in this state. Again, in that opinion, occurs these words: ''It is better that innocent men should suffer temporary inconvenience than that the guilty should escape punishment.'' This is contrary to the almost universal doctrine that has been so frequently announced in American jurisprudence, that: ''It is better that 100 guilty men should escape than one innocent man should suffer.'' There are some other cases cited by the state which refer to the seizure of contraband goods for the purpose of their destruction, and in the argument it was suggested that the provisions of this prohibitory act regarding search and seizure were intended to reach contraband. While it may well be doubted that a valid act can be passed for the seizure of contraband without fully complying with the constitutional provisions against unreasonable search and seizure, it is evident that the search and seizure provided for in this act is not to locate contraband but to get evidence of a violation of the act. In section 25 it is specifically stated that the things obtained under a search warrant ''shall be held subject to the order of the court to be used as evidence in the prosecution of any case for the violation of this act.'' And in Section 27 it is provided: ''Said liquor shall be returned to the lawful owner in case of acquittal.'' All intoxicating liquor is not contraband under the act, but only such as is unlawfully transported, possessed, etc., and it is evident from the provisions forbidding the search of dwelling-houses used exclusively

as such, that under this act all and every possession of intoxicating liquor is not unlawful, but only such as is intended to be used in connection with or for the purpose of traffic in the same.   While this act has not the plain and un-ambiguous provisions that are contained in the National Volstead act, it is to the same effect that intoxicating liquor acquired before June 30, 1919, and intended for the owner's personal use and his family and guests, and not intended in any way to be sold and trafficked in, are not unlawfully possessed or contraband.   The Supreme Court of the United States in its recent decision in the case of State v. Lincoln Safe Deposit Co., 253 U. S.; 41 Sup. Ct. 31, involving the owner's right to store and transport liquor under the Volstead act, construed the general omnibus section of that act which prohibits the transportation and possession of liquor not to apply when the "liquor is not being kept for the purpose of sale, barter, furnishing or otherwise disposing of it in violation of the title."   And say, "The purpose of the 18th Amendment and of this act considered, we cannot bring ourselves to the conclusion that such a retention of the liquor by the storage company as is here disclosed constitutes the possession of them within the meaning of this section of the act."

It is suggested that in this act a prosecuting attorney might file a complaint that would conform with the statutory requirements and have a hearing thereon before a court competent to consider the matter and find "probable cause."   The law must be tested, not as to what has been or can be done under it, but by what the law authorizes to be done under its provisions.   (12 C. J. 786).   And this principle was adopted by this court in Sterret v. Young, 14 Wyo. 146, 82 Pac. 946; 4 L. R. A.. U. S. 169, quoting with approval from Stuart v. Palmer, 74 N. Y. 183, 30 Am. Rep. 289, and Board of Education, etc., v. Aldredge, 13 Okl. 205 (Okla.) 73 Pac. 1104.

The second reserved question in the Peterson case has to do with the complaint and affidavit filed with the justice

of the peace for the issuance of the search warrant. This complaint is as follows: "State of Wyoming, County of Converse; In the Justice Court, Before H. R. Mewis, J. P., Complaint and Affidavit. Before me, H. R. Mewis, one of the Justices of the Peace in and for said County, personally appeared F. L. Crabbe, who being duly sworn according to law, deposes and says, that on or about the 21st day of August, 1919, in the County and State aforesaid, that he has a reason to believe and does believe that intoxicating liquors are possessed, sold, furnished or given away, contrary to law, or that intoxicating liquors are stored temporarily or otherwise in a certain building known as the residence of Theo. Peterson, located on Fourth Street, Lot 26, Block 16, Town of Douglas, Wyoming, in County of Converse, State of Wyoming, for the purpose of being sold, furnished, possessed, or given away contrary to the form of the statute in such cases made and provided and against the peace and dignity of the State of Wyoming. (Signed) F. L. Crabbe. Subscribed and sworn to before me this 21 day of August, A. D. 1919. (Signed) H. R. Mewis, Justice of the Peace."

There are many objections to this affidavit as not complying with the provisions of the statute but we are only concerned with the reserved question: Is it in violation of the constitutional provision mentioned? As to the 4th amendment to the constitution of the United States, it has been held to operate solely on the Federal Government, its courts and officers, and not as a limitation upon the powers of the states. (35 Cyc. 1269), and cases cited in Note 4. The state legislature, officers and courts being limited in this respect by the provisions of the state constitution. It is evident, however, from what has been said, that. the answer to the first reserved question in the Peterson case, in relation to Section 4, Article 1 of the Wyoming Constitution, must be in the affirmative, and the complaint and affidavit referred to in the 2nd reserved question is objectionable, both as being made on information and belief, and as not particularly describing the things to be searched for. A

statement and designation of "intoxicating liquor" without describing them as to kind, quantity, etc., does not comply with the constitutional provisions, (23 Cyc. 294. Malleth v. Stevenson, 26 Conn. 428, Commonwealth v. Certain Intoxicating Liquors, 110 Mass., 416, Commonwealth v. Certain Intoxicating Liquors, 13 Allen 52. State v. Lager Beer, 70 N. H. 454, 49 Atl. 575. In Re Fitzpatrick, 16 R. I. 60, 11 Atl. 773). Therefore, we must answer the second reserved question that the complaint and affidavit is violative of Section 4, Article 1 of the Wyoming Constitution. This disposes of the Peterson case, but there are certain other questions arising in the Romano case which do not occur in the reserved questions in the Peterson case. It is contended; 1st, that the justice of the peace had no authority to issue a search warrant because neither the constitution nor the prohibition act gave such authority to a justice of the peace. 2nd, that the complaint is not in accordance with the statute because it does not set out the things to be searched for, nor does it allege an offense in relation to the things to be searched for. 3rd, that the search warrant being void, and timely application for the return of the property seized having been made, it was the duty of the court to order the property of the defendant returned and to suppress all evidence in relation thereto.

As to authority of the justices of the peace to issue search warrants under the provisions of the prohibitory law, it will be noticed that nowhere in the act is it attempted to give such authority to a justice of the peace. Whenever the making or filing of a complaint is mentioned, the language used is "any court of competent jurisdiction."

"The jurisdiction of justices of the peace as judicial officers is the result of constitutional provision or statutory enactment, and their jurisdiction being defined or delineated by such enactment, resort must be had in all cases, in determining the extent thereof, to the controlling constitutional or statutory provision. In the exercise of the powers granted they must pursue the statute or constitution as the

case may be, for that is the charter of their powers, not only as to the class of cases which they may hear and determine, but as to the procedure they must observe.'' (16 R. C. L. 351. White v. Wagar, 185 Ill. 195, 57 N. E. 26, 50 L. R. A. 60) was a case involving search and seizure, and the court said: ''A justice of the peace in this state is a court of limited jurisdiction. It has and can exercise no powers except those conferred by the statute, and whenever it assumes jurisdiction in a case not conferred by the statute, its acts are null and void. (Moore, justice § 36, p. 18; Robinson v. Harlan, 1 Scam. 237; Bowers v. Green, id. 42, Evans v. Pierce, 2 Scam. 468). It is also settled that a justice of the peace has no jurisdiction to issue a search warrant except in cases provided by law. (Moore, Cr. Law, § 141; Cooley, Const. Lim. (6th Ed.) 364).''Inferior courts and justices of the peace have only such jurisdiction as is expressly given. (Bowers v. Green, 2 Ill. 42). In Harlan v. Robinson, 2 Ill. 237, it is said: ''By advertising to the organization and powers of a justice's court, it will be perceived that it is one of limited jurisdiction. The statute is the charter of its authority; and whenever it assumes jurisdiction in a case not conferred by the statute, its acts are null and void, and the officer obeying its process in such a case, makes himself liable.'' In Evans v. Pierce, et al., 3 Ill. 468, it is said: ''A justice's jurisdiction is conferred by statute, and in its exercise he must proceed in strict conformity in the manner prescribed.'' And the powers of a justice of the peace are strictly limited to what is conferred upon him by statute. (24 R. C. L. 706, 12 Cyc. 201).

The brief and argument in behalf of the state admits that the statute does not confer any powers upon a justice of the peace to issue a search warrant for intoxicating liquors, nor does the constitution of the state confer such power, but argues that neither does the constitution confer in terms power upon a justice of the peace to hold preliminary examination as provided by Chapter 397, Sec. 6055-6066, Wyoming Compiled Statutes 1910, to issue search warrants to

search for stolen property. (Ch. 413). These powers were possessed by justices of the peace at common law, and the statutes referred to were enacted in the early days of the territory of Wyoming, and was known to be part of the powers possessed and exercised by justices of the peace by the framers of the constitution, and have continued to be exercised by them since the admission of Wyoming as a state; these statutes have never been repealed. Sec. 3, Art. 21, of the constitution provides that they shall therefore continue in force until repealed. But the validity of these statutes are not in question in this case. Justices of the peace not being given authority to issue search warrants to search for or seize intoxicating liquor anywhere, either by statute, the state constitution or the common law, they have no such power, and the issuance of such warrants by a justice of the peace are therefore null and void.

It is claimed that even if the justice of the peace had authority to issue the search warrant, the complaint filed in the Romano case did not comply with the statute. What has been said above relative to the complaint in the Peterson case applies in great part to the complaint in the Romano case. It is sworn to on information and belief, and does not describe the things to be searched for other than "intoxicating liquors," so does not comply with either the constitution or the act in these respects.

The liquors and their receptacles having been seized under a void warrant, should they be ordered returned to the defendants on timely application?

It has been frequently held that if evidence is competent, relevant and material and offered in the orderly course of the trial it will be received and the court will not stop to inquire into the manner in which it was obtained. "Nevertheless it is obvious and the courts have frequently declared that if letters and private documents may be seized in violation of the constitutional safeguard and held and used in evidence against a citizen accused of a crime, then the constitutional provision is ineffectual

and of no value.'' (10 R. C. L. 933). Therefore it has been generally held by the latest and best reasoned authorities that if a timely application is made for the return of property seized in violation of the constitutional provision against unreasonable search and seizures before the trial or the offer of the property as evidence therein it is the duty of the court to order the return of the property, as is stated in 10 R. C. L., pages 933 and 934, as follows: ''The principle underlying the decisions admitting the evidence is that an objection to an offer of proof made on the trial of a cause raises no other question than that of the competency, relevancy, and materiality of the evidence offered, and that consequently the court, on such an objection, cannot enter on the trial of a collateral issue as to the source from which the evidence was obtained. But since there is a right, there must of necessity be a remedy, and the remedy is to be found in the making of a timely application to the court for an order directing the return to the applicant of the papers unlawfully seized. On such an application, the question of the illegality of the seizure may be fully heard, and if the court erroneously refuses to order a return of the papers, and thereafter receives them in evidence against the applicant over his objection, it is an error for which a judgment of conviction must be reversed.''

In the case of Commonwealth v. Intoxicating Liquors, 103 Mass. 454, it was held that when the complaint was quashed for defects in matters of form, the owner of the intoxicating liquors seized upon the warrant is entitled to an order for their return. The case of People v. Maxhausen, a late Michigan case, 204 Mich. 559, 171 N. W. 557, 3 Am. Law Rep. Ann, 1305, was a case of a seizure of intoxicating liquors without a legal search warrant, and the court held that it must be returned; speaking of the constitutional provisions applicable, the court said: ''These provisions not only secure the individual in his

person, his home, and his property from invasion through. unbridled legislation, but they also secure the individual in his person,.his home, and his property from invasion through unbridled and unrestrained executive or administrative will. It ought not to be necessary to recall the fact that it is of the essence of a free government that the individual shall be secure in his person, his home, and his property from unlawful invasion, from unlawful search, from unlawful seizure. The writing of these provisions into the federal Constitution, into every Constitution of every state in the Union, was not an idle ceremony. With a clearness of vision our forefathers provided for a lawful search and seizure, one supported by oath or affirmation, describing the place to be searched and the person or things to be seized, and in the same section safeguarded the rights of the individual by inhibiting unreasonable and unlawful search. They provided an orderly manner for search and seizure and prohibited all others. * * * These rights of the individual in his person and property should be held sacred, and any attempt to fritter them away under the guise of enforcing drastic sumptuary legislation (no matter how beneficial to the people it may be claimed to be) must meet with the clear and earnest disapproval of the courts. Did the trial judge commit error in ordering the return of the liquor thus seized? It must be borne in mind that we are not here dealing with the search by a jailer of one lawfully under arrest upon warrant duly issued before placing him in a cell, and the retention of the proceeds of such search; nor are we considering a case where under a lawful search warrant duly issued a search and seizure has been effected; here we are dealing with the right to retain the liquor taken without any search warrant. An examination of many cases decided by the United States Supreme Court, involving both the fourth and fifth amendments, satisfied us that the rule announced by that court will be reached by careful

consideration of three cases decided by that court, and only three; that by a careful consideration of these three cases we will be able to clearly understand the rule laid down by that, the court of last resort of the nation, and the reason for the rule. * * * where it is made to appear before the trial that articles have been taken from the possession of the defendant in violation of his constitutional rights, and by unlawful search and seizure, and without any search warrant at all, it then becomes the duty of the trial court to order the return to the defendant of the articles thus unlawfully taken. * * * But this court has also held upon an application made before trial for mandamus to set aside an order of the circuit court, permitting the police department to take possession of property of the citizen, pending investigation for crime, and depriving the owner of its possession, that the order should be vacated and set aside, resulting in the return of the property thus unlawfully withheld. (Newberry v. Carpenter, 107 Mich. 567, 65 N. W. 530, 31 R. R. A. 163, 61 Am. St. Rep. 346). In the instant case the evidence taken before the magistrate and returned to the circuit court conclusively established the invalidity of the search and seizure and the invasion of defendant's constitutional rights. The circuit judge did not err in directing the return of the liquor to the defendant."

The case of Weeks v. the United States, 232 U. S. 383, 34 Sup. Ct. 341, 58 L. Ed. 652, 34 Supreme Court Reports 341, 54 L. R. A. N. S. 834, was one in which the defendant was convicted in the district court of the United States of the western district of Missouri of unlawfully using the mails in aid of a lottery or gift enterprise and the case was taken to the Supreme Court of the United States on error. Mr. Justice Day delivered the opinion of the court, which was an able, well reasoned and exhaustive one. It appeared that certain police officers had gone to the house of the defendant and being told by a neighbor where the

key was kept, found it and entered the house. They searched the defendant's room and took possession of various papers and articles found there and turned them over to the United States marshall. The marshall afterwards searched the defendant's room and carried away certain letters and envelopes. Neither the police officer or the marshall had a search warrant. Before the time of trial the defendant filed a petition for the return of the property taken as being seized in violation of his constitutional rights. The court on consideration of this petition ordered certain of the property that was not pertinent to the charge against the defendant returned to him, but denied the petition as to pertinent matters. The district attorney returned part of the property taken, but retained the rest, stating in writing that the property retained by him was to be used as evidence in the trial of the case. At the trial, before any evidence had been given, the defendant again offered his petition for the return of the property which was denied by the court, and the papers, lottery tickets, etc., were offered at the trial over the objection of the defendant that they were obtained by breaking into his home without a search warrant and in violation of his constitutional rights. The defendant assigned error, among other things, in the refusal of the court to grant the petition for the return of his property, and in permitting the papers to be used at the trial. The decision of the court was that this was such error that the conviction of the defendant had to be set aside and the case reversed, and in the course of the opinion said: "Judge Cooley, in his Constitutional Limitations, pp. 425, 426, in treating of this feature of our Constitution said: 'The maxim that every man's house is his castle is made a part of our constitutional law in the clauses prohibiting unreasonable searches and seizures, and has always been looked upon as of high value to the citizen.' 'Accordingly', says Lieber in his work on Civil

Liberty and Self-Government, (62), in speaking of the
English law in this respect, 'no man's house can be forc-
ibly opened, or he or his goods be carried away after it
has been thus forced, except in cases of felony; and then
the sheriff must be furnished with a warrant, and take
great care lest he commit a trespass. This principle is
jealously insisted upon.' * * * In the Boyd case, supra,
after citing Lord Camden's judgment in Entick v. Car-
rington, 19 Ho. St. Tr. 1029, Mr. Justice Bradley said
(630): 'The principles laid down in this opinion affect
the very essence of constitutional liberty and security.
They reach farther than the concrete form of the case then
before the court, with its adventitious circumstances; they
apply to all invasions on the part of the government and
its employees of the sanctity of a man's home and the
privacies of life. It is not the breaking of his doors and
the rummaging of his drawers that constitutes the es-
sence of the offense; but it is the invasion of his indefeas-
ible right of personal property, where that right has never
been forfeited by his conviction of some public offense—
it is the invasion of this sacred right which underlies and
constitutes the essence of Lord Camden's judgment.' In
Bram v. United States, 168 U. S. 532, 42 E. Ed. 568, 18
Sup. Ct. Rep. 183, 19 Am. Crim. Rep. 547, this court, in
speaking by the present chief justice of Boyd's case, deal-
ing with the 4th and 5th amendments, said (544): 'It
was in that case demonstrated that both of these amend-
ments contemplated perpetuating, in their full efficacy, by
means of a constitutional provision, principles of human-
ity and civil liberty which had been secured in the mother
country only after years of struggle, so as to implant them
in our institutions in the fullness of their integrity, free
from the possibilities of future legislative change.' The
effect of the 4th amendment is to put the courts of the
United States and federal officials, in the exercise of their
power and authority, under limitations and restraints as

to the exercise of such power and authority, and to forever secure the people, their persons, houses, papers, and effects, against all unreasonable searches and seizures under the guise of law. This protection reaches all alike, whether accused of crime or not, and the duty of giving to it force and effect is obligatory upon all intrusted under our federal system with the enforcement of the laws. The tendency of those who execute the criminal laws of the country to obtain conviction by means of unlawful seizures and enforced confessions, the latter often obtained after subjecting accused persons to unwarranted practices destructive of rights secured by the federal Constitution, should find no sanction in the judgments of the courts, which are charged at all times with the support of the Constitution, and to which people of all conditions have a right to appeal for the maintenance of such fundamental rights. * * * The accused, without awaiting his trial, made timely application to the court for an order for the return of these letters, as well as other property. This application was denied, the letters retained and put in evidence, after a further application at the beginning of the trial, both applications asserting the rights of the accused under the 4th and 5th amendments of the Constitution. If letters and private documents can thus be seized and held and used in evidence against a citizen accused of an offense, the protection of the 4th amendment, declaring his right to be secure against such searches and seizures, is of no value, and, so far as those thus placed are concerned, might as well be stricken from the Constitution. The efforts of the courts and their officials to bring the guilty to punishment, praiseworthy as they are, are not to be aided by the sacrifice of those great principles established by years of endeavor and suffering which have resulted in their embodiment in the fundamental law of the land. The United States marshall could only have invaded the house of the accused when armed with a war-

rant issued as required by the Constitution, upon sworn information, and describing with reasonable particularity the thing for which the search was to be made. Instead, he acted without sanction of law, doubtless prompted by the desire to bring further proof to the aid of the government, and under color of his office undertook to make a seizure of private papers in direct violation of the constitutional prohibition against such action. Under such circumstances, without sworn information and particular description, not even an order of court would have justified such proceedure; much less was it within the authority of the United States marshall to thus invade the house and privacy of the accused. In Adams v. New York, 192 U. S. 585, 48 L. Ed. 575, 24 Sup. Ct. Rep. 372, this court said that the 4th amendment was intended to secure the citizen in person and property against unlawful invasion of the sanctity of his home by officers of the law, acting under legislative or judicial sanction. This protection is equally extended to the action of the government and officers of the law acting under it. (Boyd Case, 116 U. S. 616, 29 L. Ed. 746, 6 Sup. Ct. Rep. 524). To sanction such proceedings would be to affirm by judicial decision a manifest neglect, if not an open defiance of the prohibitions of the Constitution, intended for the protection of the people against such unauthorized action. * * * That papers wrongfully seized should be turned over to the accused has been frequently recognized in the early as well as later decisions of the courts. (1 Bishop, Crim. Proc. § 210, Rex v. Barnett, 3 Car. & P. 600; Rex v. Kinsey, 7 Car. & P. 447; United States v. Mills, 185 Fed. 318; United States v. McHie, 194 Fed. 894, 898). We therefore reach the conclusion that the letters in question were taken from the house of the accused by an official of the United States, acting under color of his office, in direct violation of the constitutional rights of the defendant; that having made a seasonable application for their return, which was heard

and passed upon by the court, there was involved in the order refusing the application a denial of the constitutional rights of the accused, and that the court should have restored these letters to the accused. In holding them and permitting their use upon the trial, we think prejudicial error was committed.''

From the above it is apparent it was the duty of the court in the Romano case to grant, as it did, the petition of the defendant and order the return of the property that had been obtained from him under a void search warrant and in violation of his constitutional rights.

The reserved constitutional question in the Peterson case will therefore be answered in the affirmative, as regards Sec. 4, Article 1 of the Wyoming Constitution.

In the Romano case the exceptions taken by the prosecuting attorney of Sheridan county will be denied; and the orders of the district court to which the exceptions were taken are approved.

POTTER, C. J., concurs.

The late Chief Justice Beard had participated in the consultation and decision in this case, and had concurred in all the conclusions herein arrived at, but died while the written opinion was being prepared and before it was completed.