**Silas MANNING, Appellant,**

v.

**COMMONWEALTH of Kentucky, Appellee.**

Court of Appeals of Kentucky.

Oct. 16, 1959.

J. Thomas Soyars, William F. Edmunds, Hopkinsville, for appellant.

Jo M. Ferguson, Atty. Gen., Earle V. Powell, Asst. Atty. Gen., for appellee.

SANDIDGE, Judge.

Appellant, Silas Manning, appeals from his conviction of willfully murdering Pat Denton and sentence to death, and urges as grounds for reversal, (1) that clothing illegally obtained without a search warrant from his residence was improperly admitted as evidence, (2) that testimony of his confinement in the penitentiary for a previous crime was erroneously admitted, (3) that the trial court erred in permitting certain testimony at the first trial to be made a part of the testimony at the second trial, and in basing its ruling as to the admissibility of appellant's alleged confession on such previous testimony, and (4) that the final argument of the Commonwealth Attorney to the jury was highly inflammatory and prejudicial to the rights of appellant. We will consider these grounds in the order set out.

1. Pat Denton and his wife resided near the city limits of Hopkinsville. About 3 o'clock on the morning of July 20, 1958, they were beaten to death with a tire tool or other blunt instrument by parties who had broken into their home. Screams, pleas for mercy and "pounding noises" were heard by neighbors, who called the police. Mrs. Denton died before the arrival of the officers and Pat Denton died shortly thereafter from the blows he had received. He was in such condition when the officers arrived that he was unable to give them any clues or information as to the guilty parties, other than to say there were two of them.

A few minutes after the crime was committed an automobile licensed to Willie May Barker was found by the officers parked and apparently deserted on the street near the Denton home. Willie May Barker resided 300 or 400 yards back of the Denton place. Sheriff McKinney immediately contacted and talked to Barker at his home. What Barker told him was not disclosed, since it was hearsay, but presumably it involved or cast suspicion on appellant— anyhow, the sheriff arrested Barker, placed him in the automobile with Lieut. Pritchett and himself, and drove to appellant's house. We quote from the undisputed testimony of Sheriff McKinney as to what then occurred.

"Q. When you got to Silas Manning's house, what did you do? A. I got out. I had collected insurance for a good many years at Silas Manning's home. I got out of the car and his wife

and her sister knew me and the door was standing open and I went on the porch and they said, 'Come in Mr. McKinney', and I asked them where Silas was and they both stood there and I said, 'I asked you where Silas was. Is he in here?' and neither one of them would answer. I said, 'A party was just killed and I want to know where Silas is,' and she said, 'He just went out the back door.' I said, 'Where did he go?' She said, 'I don't know.' I said, 'Where is the clothes that he had on last night?' and she stood and looked at me for a minute and I said, 'There has been a party killed and I want to know where those clothes are and if you don't tell me I'll hold you both as accessories to murder,' and she said, 'Go look in the kitchen. He just put something in there.'

"Objection by Mr. Soyars.

"Overruled by the Court.

"I went to the kitchen stove and grabbed a lifter and lifted up the cap and there was a type of silkish-looking shirt in there and I reached my hand in there and picked it out. It was about half burned. It was still burning at that time.

"Objection by Mr. Soyars to any statements about the clothes or the introduction of the clothes themselves into evidence.

"Overruled by the Court.

"Exceptions.

"Q. I will ask you if this is the shirt or what is left of it that you got out of that stove? A. That is what is left of the shirt that I pulled out of the stove myself.

"Q. What color is that? A. It is pink. I am color blind, but it is pink or something of that kind.

"Q. Mr. McKinney, what else did you do? A. After I got the shirt out

I asked her for his pants and one of them said to me, 'I saw him go down toward that toilet in the back,' and I saw some smoke and I run out the back and smoke was still coming out of the toilet and I reached down in the hole in the toilet and pulled the pants out of there.

"Is that the Pants? A. I pulled that pair of pants out of there myself.

"Q. This was down inside that toilet? A. That's right. It was smoking and smoldering at that time. There was so much stuff there it had smothered it out to a certain extent, but it was wringing wet with stuff out of that toilet.

"Prosecution Exhibit I (shirt) and Prosecution Exhibit II (pants) accepted into evidence.

"Q. Where did you go then, Mr. McKinney? A. I came right to the sheriff's office and brought Willie May Barker, Lieutenant Pritchett and myself, and I put the call out on the radio for them to try to pick up Silas Manning."

■■ The testimony of the sheriff in regard to the clothing and its introduction in evidence presents the question as to whether it had been legally seized. As we have many times said, § 10 of our Constitution guarantees that citizens shall be secure in their persons, houses, papers and possessions, from unreasonable search and seizure. The constitutional provision does not undertake to define what constitutes an unreasonable search and seizure, but it is judicially settled that all illegal searches are "unreasonable". Search of a residence or premises of a legal occupant without a search warrant is illegal and unreasonable, except when he voluntarily consents thereto. Consent of his wife does not remove the necessity of a search warrant. Search of one's person, as distinguished from his residence or premises, without a search warrant may be justified as an incident of arrest,

but it is limited to a search contemporaneous with, or subsequent to, an arrest. It does not authorize a search prior to an arrest, in order to secure evidence to support a future arrest. Citation of authorities supporting these elementary principles is not deemed necessary; but, to those desiring such information, see Benge v. Com., Ky., 321 S.W.2d 247; Hall v. Com., Ky., 261 S.W.2d 677; Potowick v. Com., 198 Ky. 843, 250 S.W. 102; Veal v. Com., 199 Ky. 634, 251 S.W. 648; Elmore v. Com., 282 Ky. 443, 138 S.W.2d 956; Cline v. Com., 312 Ky. 645, 229 S.W.2d 435; Duncan v. Com., 198 Ky. 841, 250 S.W. 101.

■ Here, the clothing was obtained from the premises legally occupied by appellant in his absence, without a search warrant. It was seized prior to his arrest, and not as an incident thereto. Even if the wife could have consented to the search for appellant's clothes, such consent was coerced from her through the sheriff's threats.

It is obvious that the clothing in question was illegally seized, and that the trial court committed a reversible error in admitting its introduction and testimony with respect thereto in evidence.

2. The second ground for reversal concerns the testimony of Bernice Dupee, who was called by the Commonwealth to prove a statement made by appellant a few days before the commission of the crime involved. We quote her testimony:

"Q. All right, Bernice, did you hear him make any statement in regard to some trouble? A. He was in Mrs. Black's cursing there, and he said if he got in any more trouble, he had been in the pen once and if he got in any more trouble he was

"Objection by Mr. Soyars

"going to have somebody with him.

"The Court: Say that again.

"A. He said that if he got into any trouble he had been in the pen once, and he would carry somebody else.

"Objection by Mr. Soyars.

"Overruled by the Court.

"Exceptions."

■ Appellant did not testify, and the quoted testimony of this witness could not have been offered for the purpose of attacking his credibility. Obviously it was offered to impress upon the jury that he had been guilty of another crime and was an ex-convict. The introduction of this testimony violated the general rule that proof of another crime unconnected with the crime for which a defendant is being prosecuted is inadmissible and is a reversible error. Powell v. Com., 308 Ky. 467, 214 S.W.2d 1002; Manz v. Com., Ky., 257 S.W.2d 581; Jack v. Com., 222 Ky. 546, 1 S.W.2d 961, 963. In the Jack case we said:

"As defendant did not testify, his credibility was not in issue, and the testimony as to his having been in the penitentiary was erroneous, and the proof of other crimes threw no light on this transaction and was incompetent."

The error in admitting such testimony was augmented by the court having the witness repeat the statement a second time to the jury.

3. The third ground for reversal involves the introduction in evidence of a confession by appellant. The alleged confession was not written, and is claimed to have been made orally to the sheriff and other peace officers.

It is prescribed in KRS 422.110, known as the "Anti-Sweating" Act, that the trial judge shall determine the competency and admissibility of any alleged confession from evidence heard by him, independent of and without the hearing of the jury.

Appellant was first tried for the murder involved in October, 1958, at which trial the jury was unable to reach a verdict. At that trial the judge heard testimony, out of the hearing of the jury, concerning the manner in which the alleged confession was ob-

tained, as provided in KRS 422.110, and ruled that it had been voluntarily given and was competent and admissible in evidence. Thereupon, the sheriff and other officers were permitted to testify as to same.

■ On the second trial, the one involved on this appeal, the Commonwealth moved that the testimony heard at the previous trial with respect to the admissibility of such confession be made a part of the testimony, to which motion appellant objected. Before ruling on the objection the trial judge permitted the sheriff and another witness to testify very briefly and meagerly in regard to how the alleged confession was obtained, and then made the following ruling on the motion of the Commonwealth:

> "The Court: Without any further evidence *and considering the record of the former trial,* the Court is going to rule that any statements made to Sheriff McKinney are competent."

In other words, the court thereby effectually sustained the motion of the Commonwealth and ruled at the second trial that the alleged confession was admissible and competent, not upon the basis of testimony introduced at the second trial, but upon the basis of that introduced at the first trial.

In so ruling the court erred, since it is expressly provided in KRS 422.150 that no testimony of a witness at a prior trial shall be used as evidence in any subsequent trial, except that of a witness who has died in the interim, in any criminal case *without the consent of the defendant.* Denny v. Com., 274 Ky. 419, 118 S.W.2d 778. Here, the defendant did not consent, but expressly objected to the use of such prior testimony. In short, the trial judge concluded and ruled that the confession involved was competent, but his conclusion was, and necessarily had to be, based on the consideration of evidence heard at the prior trial, which in view of appellant's objection was incompetent and inadmissible evidence at the second trial. Consequently, the court erroneously ruled at the second trial that the confession was admissible, and the sheriff and other peace officers were improperly permitted to testify with respect thereto. This was a prejudicial and reversible error.

4. We find no prejudicial errors in the final argument of the Commonwealth Attorney to the jury.

The judgment of conviction is reversed, the sentence is set aside, and the case is remanded for further proceedings in conformity with this opinion.