**Milo GILKISON, Appellant**
**(Defendant below),**

v.

**The STATE of Wyoming, Appellee**
**(Plaintiff below).**

No. 3253.

Supreme Court of Wyoming.

Aug. 6, 1965.

Jack Wolfe, Sheridan, for appellant.

No appearance for appellee.

Before PARKER, C. J., and HARNS-
BERGER, GRAY, and McINTYRE, JJ.

Mr. Chief Justice PARKER delivered
the opinion of the court.

### The Facts

From about 9 p. m. on September 7, 1963,
two deputy State game wardens were pa-
trolling in the Tongue River area west of
Dayton, Wyoming. According to Warden
Gutz, "I had had some game killed in my
district the last few days prior to this.
I was up there specifically to look for game
violations. * * * I had had some elk
and deer killed off the highway, that were
shot off the highway, and dressed out and
taken from the vicinity." During this
patrol, they stopped and searched defend-
ant's vehicle, allegedly believing it contain-
ed wild life taken or possessed in violation
of the laws of this State. When one of
the wardens found the carcass of a beef,
they called by radio to the highway patrol,
requesting them to notify the sheriff's office.
Later that evening the undersheriff of the
county came to the scene and arrested the
defendant.

On September 8, the wardens and a
deputy sheriff drove up above Dayton on
U. S. Highway 14. The county attorney
and sheriff's office had requested the ward-
ens' assistance. Driving along U. S. High-
way 14, they noticed spots of blood on a
galvanized metal guardrail. This was at a
point where the wardens had seen the lights
of a stopped vehicle the previous night.
Noticing the blood, they got out, stepped
over the guardrail, and found a fresh beef
hide lying on the shoulder. The hide was
turned over to the county sheriff's office.
Thereafter it was determined that the brand
of Leonard Graham was on the hide. As
a result of talking with Mr. Graham, they
determined the area in which his cattle
were running and subsequently went to
that area. After looking over the ground
they discovered tracks of a vehicle identical
to the defendant's and followed them.
Darkness came before they reached the
end of the tracks and the following day
horses were taken up. At the end of the
tracks, blood, a pile of entrails, and a part
of an udder from a heifer cow were found.
The udder was turned over to the deputy
sheriff and found to fit the hide brought in
the previous day.

Defendant was charged on three counts,
(1) unlawfully and feloniously killing neat
cattle, (2) larceny of a slaughtered heifer
of a value of $150, and (3) transportation
of unlawfully obtained and killed meat.
The court granted defendant's motion for
a directed verdict on the third count, but
entered judgment and sentence based upon
the jury's verdict convicting defendant on

the first two counts. Appeal formerly resulted in a divided court, Gilkison v. State, Wyo., 397 P.2d 279.

### Opinion on Rehearing

■ Appellant charges that the statute under which his motor vehicle was searched is in violation of Art. 1, § 4, Wyo.Const. Although this matter is now raised for the first time, it appears to be pivotal. Section 23–24, W.S.1957, provides, inter alia, "The game warden * * * and each deputy warden * * * shall have the right to search, without warrant * * * automobiles * * * for any wild life which any such warden or officer shall have reason to believe was taken or possessed in violation of the laws of this state." Appellant argues that since game and fish law violations are declared to be misdemeanors § 23–24 is unequivocally unconstitutional when measured by the right of citizens to be secure in their persons and effects against unreasonable searches and seizures, citing State v. George, 32 Wyo. 223, 231 P. 683, and insists that in the statute there is the equivalent of a "general warrant," universally condemned, and that the legislature had by the statute attempted to apply the law relative to probable cause to believe a felony had been committed to misdemeanor offenses. It is true that the usual, common-law rule as to the circumstances justifying an arrest without warrant is that a police officer may arrest without warrant one believed by the officer upon reasonable cause to have been guilty of a felony, and that he may only arrest without a warrant one guilty of a misdemeanor if committed in his presence. State v. George, supra. Nevertheless, the existence of such common-law rule would not per se prohibit the enactment of a statute such as § 23–24.

The case of State v. Kelly, 38 Wyo. 455, 268 P. 571, would seem of significance. The statute involved there was § 26, c. 117, S.L. of Wyoming, 1921, which read, "Whenever any officer of the law shall discover any person in the act of transporting in violation of the law, intoxicating liquors in any * * * automobile * * * it shall be his duty to seize [such liquors]." There the sheriff noticed in a car, about which he had been alerted, a quilt which covered what appeared to the officer to be small kegs. Upon uncovering these kegs and finding whiskey, he arrested the owners and they were charged with unlawful possession of intoxicating liquor. Before the commencement of the trial, one of the defendants made a motion to suppress the evidence obtained in connection with the search of the automobile. Evidence was taken, and the court overruled the motion. The defendant was tried and convicted. In an opinion affirming the conviction, this court said, 268 P. at 572:

"A similar statute was construed by the United States Supreme Court in the case of Carroll v. United States, 267 U. S. 132, 45 S.Ct. 280, 69 L.Ed. 543, 39 A.L.R. 790. In that case the court pointed out the distinction that has always been observed in the laws of the United States between a home and vehicles, and that, while no search and seizure without a warrant in a home is permitted, a search of an automobile without a warrant, authorized by law, cannot be said to be unreasonable under all circumstances. It was stated in that case that it would ordinarily be intolerable and unreasonable, if an officer or any one else were authorized to stop every automobile on the chance of finding liquor, and thus subject persons lawfully using the highways to the inconvenience and indignity of a search without a search warrant; that those entitled to use the public highways have a right of free passage without interruption of search, unless a competent official *authorized to search has probable cause for believing that a vehicle is carrying contraband or illegal goods.* * * *" (Emphasis supplied.)

And see Preston v. United States, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777. In the Carroll case that court also noted, 267 U.S. at 158–159, 45 S.Ct. at 287, that "The right

to search and the validity of the seizure are not dependent on the right to arrest. They are dependent on the reasonable cause the seizing officer has for belief that the contents of the automobile offend against the law."

In further support of his theory that § 23–24 is unconstitutional, appellant cites Wilson v. People, Colo., 398 P.2d 35; Aiuppa v. United States, 10 Cir., 338 F.2d 146, and State v. Peterson, 27 Wyo. 185, 194 P. 342, 13 A.L.R. 1284.

In the Wilson case, the statute under fire was one authorizing a search under any circumstances of premises, and while we would agree that it has always been assumed that one's house cannot lawfully be searched without a search warrant, except as incident to a lawful arrest at the house, it must be borne in mind that in the instant case we are dealing with the search of a motor vehicle, and of course, before a warrant could be secured a vehicle would be beyond the reach of an officer with any illegally taken wild life.

In the Aiuppa case, the court in speaking of § 706, 16 U.S.C.A., said, 338 F.2d at 148:

" * * * While the statute authorizes an arrest without a warrant for violations committed in the Agent's presence or view, it does not authorize a warrantless search. Instead, it expressly delegates to judges and commissioners authority to issue warrants in all such cases, upon a proper showing of probable cause. It is thus manifestly clear, we think, that *Congress deliberately withheld* from these Agents the province of determining for themselves the existence of probable cause and the exceptional circumstances which would justify an expeditious warrantless search. * * * " (Emphasis supplied.)

In the instant case, the legislature, aware of the difficulties of enforcing this State's game laws, expressly *delegated* authority to specific officers to search without warrants.

In State v. Peterson, supra, this court, in answering reserved questions, found § 26, c. 25, S.L. of Wyoming, 1919, unconstitutional; but there, again, we were dealing with a statute pertinent to premises, not motor vehicles. It is to be noted, also, that this case was decided prior to State v. Kelly, supra.

Thus, we must hold that defendant has failed to show § 23–24 unconstitutional. However, the present raising of this question sheds a different light on defendant's original charge that the court erred in denying the motion to suppress and in admitting the evidence concerning the results of the search.

Reviewing the occurrences in the trial court, we find that after defendant's plea of "not guilty" had been accepted a hearing was conducted concerning his motion to suppress all of the evidence in the case on the ground that it had been obtained by illegal search and seizure of his vehicle; and at the conclusion of the hearing the court denied the motion, saying, "there's no showing what evidence is to be suppressed." Thereafter, when the case proceeded to trial, defendant moved to suppress all evidence of the search and seizure. The motion was denied on the ground that "the court has not been informed of what evidence is to be suppressed and that there has been no showing to the court that there was any search or seizure or any arrest made or any evidence obtained as a result of an unreasonable search or seizure or arrest."

The State's first witness, Warden Gutz, testified about the occurrences immediately preceding and subsequent to the stopping of the vehicle and to what was found by the officers on the succeeding days. When the witness had concluded, the defendant moved to strike his testimony on the ground that it was the fruit of an illegal search. The court denied the motion, but after noting that Gutz had anticipated "a game violation, which was a misdemeanor, and there was no showing that the waiver of a warrant for a search and seizure had been met by the

witness having probable cause to believe that a felony had been committed," the court orally instructed the jury that they were to disregard the evidence of the witness "just with regard to September 7, 1963, after the vehicle of the defendant was stopped." Evidence later elicited related to discoveries of the officers on days subsequent to the stopping of the defendant's vehicle, to all of which defendant objected without success. On the subject of what evidence was to be disregarded, no written instructions were given to the jury.

■ Defendant now argues on the rehearing that this court should give weight to the fact that the trial court ruled there was no probable cause for the initial search and seizure by the wardens. Although from our discussion of the constitutionality of § 23–24 it is obvious that we must hold such ruling to have been without foundation, there was, if the search should be held improper, basis upon which not only that evidence but everything which became accessible to the prosecution by reason of the search would have been inadmissible as "a fruit of the poisonous tree." Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; Annotation, 50 A.L.R.2d 531, 569.

Thus, the crux of the matter was whether or not under the circumstances present in the case a man of prudence and caution would have had reason to believe that wild life taken or possessed in violation of the laws of this State were present in appellant's vehicle. This was a matter upon which the court did not pass, one which in cases relating to the warrantless search of a motor vehicle is vital, and which because the evidence is not without contradiction cannot be determined in this court. Without a proper determination on this aspect, there was prejudicial error to the defendant.

The judgment is therefore reversed and the cause is remanded for new trial.

Reversed and remanded.

HARNSBERGER, Justice (dissenting).

I dissent. See United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed. 2d 684.