182 So.2d 273 (1966)
Kathryn PRATHER, Appellant,
v.
STATE of Florida, Appellee.
No. 5767.
District Court of Appeal of Florida. Second District.
January 26, 1966.
*274 Henry Gonzalez, Tampa, for appellant.
Earl Faircloth, Atty. Gen., Tallahassee, and Robert G. Stokes, Asst. Atty. Gen., Lakeland, for appellee.
SMITH, SHERMAN N., Jr., Associate Judge.
Appellant, Kathryn Prather, was charged, found guilty by a jury and sentenced for the offense of shooting into a private building. She appeals, alleging error of unlawful search and seizure, inadmissible evidence and denial of her motion for directed verdict.
In August 1963, the Defendant, Kathryn Prather, was on strike with other employees *275 against General Telephone Company. On August 26th the Defendant approached the desk clerk at the Hotel Floridan and stated that she would like to rent Room No. 1622 for her uncle, Mr. Patrick. When advised that this room was not available, she rented the adjoining room, No. 1624, paid in advance and took the key. The following day a guard employed by the telephone company was on duty on the roof of the General Telephone Company building. Later that afternoon during a severe thunderstorm, he left the roof and after the storm returned and discovered holes in equipment located on the top of the building. The holes were later identified as those made by a high powered rifle bullet. A civil engineer subsequently conducted tests and surveys and concluded that the bullets were fired from Room No. 1624 of the Hotel Floridan. An elevator boy in the Hotel Floridan identified the Defendant as the person that he took to the Sixteenth floor on August 27th. On August 31st, at noon the Defendant was arrested inside her Apartment No. 39, Morrison Court Apartments in Tampa on the charge of shooting into a private building. At the time there was no search of her apartment and no weapons were seized. Later that day, Detective Ehrich went to the manager of the Morrison apartments and requested permission to search Apartment No. 39. His request was denied. Then the detective requested the manager to take a look in the apartment and see if there was anything there that shouldn't be there, but this was also denied. An officer was stationed in the hallway to observe the apartment. Early in the evening of the following day, Cullie Mobley approached the manager with the request to rent an apartment which was declined. Later that same evening, Mobley and Donald Belcher informed the policeman in the hallway that they had the Defendant's permission to enter her apartment which they did by means of a key. The officer summoned a number of other police officers, including Detective Ehrich, who went to the apartment and ordered Mobley and Belcher to come out. When they refused, the officers broke down the door to the apartment, entered and placed Mobley and Belcher under arrest for trespassing because the manager had requested that they be removed from the premises.
Detective Ehrich saw what appeared to be the barrel of a gun on a shelf in a closet as he was entering the room. When he examined it closer, he observed that it was a silencer. Thereafter he made a systematic search of the entire apartment, covering a period of several hours, and found two rifles, a machine gun and two loaded clips of ammunition. The officers had neither a search warrant for Apartment No. 39 nor an arrest warrant for Mobley or Belcher, and there was no consent to the search.
The court denied Defendant's motion to suppress and the two rifles, the machine gun and the clips of ammunition were received in evidence. FBI agents testified that on the 25th day of July, 1963, they examined a General Telephone Company cable on the Gandy Bridge and found it damaged by bullets some of which were imbedded in the cable and were removed. Experiments made with the machine gun seized at the Defendant's apartment established in their opinion that the bullets removed from the cable on the Gandy Bridge were fired from the machine gun found at the apartment of the Defendant. They further testified that the bullet holes in the equipment on top of the building of the telephone company were not made by either the machine gun or the rifles seized in the apartment of the Defendant.
The search was unreasonable and the court erred in denying the motion to suppress. Law enforcement officers may not make a valid search by entering premises ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for evidence of crime. Such search is unreasonable even though the arrest is supported by probable cause or a valid arrest *276 warrant. Jones v. United States, 1958, 357 U.S. 493, 78 S.Ct. 1253, 3 L.Ed.2d 1514; and Chapman v. State, Fla.App. 1963, 158 So.2d 578.
The arrest of Mobley and Belcher on the charge of trespassing was not a lawful arrest. The Defendant leased the apartment in which the trespassing is alleged to have been committed. The Defendant gave Mobley and Belcher permission to go in the apartment. There was no trespass. The fact that they did not have the permission of the manager of the building would not constitute a criminal trespass, 32 Am.Jur., Landlord and Tenant, Sections 197 and 200. Even if Mobley and Belcher were committing a trespass in the presence of the officer that crime is a misdemeanor and the arrest was made without a warrant. The officers were not authorized to break open the door in order to make an arrest without a warrant for a misdemeanor, F.S. Section 901.19, F.S.A.
Finally, the State finds itself in the inconsistent position of urging a lawful arrest for trespass within the apartment and at the same time stating that, as an incident to the arrest of trespassers, the officers had the right to search premises upon which they were trespassing on the theory that the trespassers were in the possession, custody and control of the premises searched and the items seized. The search bore no relationship to the charge on which Mobley and Belcher were arrested. Burley v. State, Fla. 1952, 59 So.2d 744 and Collins v. State, Fla. 1953, 65 So.2d 61. The circumstances here did not justify a search without benefit of a search warrant. There was no emergency, the Defendant had been arrested in the apartment a day earlier, there was ample time to obtain a search warrant, and finally, the search was not incidental to a lawful arrest. An arrest may not be used as a pretext to search for evidence. McKnight v. United States, 1950, 87 U.S.App.D.C. 151, 183 F.2d 977. The court erred in admitting into evidence the fruits of the unreasonable search and seizure.
On retrial, by excluding the machine gun from evidence, all evidence of the Gandy Bridge shooting will be entirely irrelevant, so we need not pass on the relevancy of that evidence at the first trial.
The State relied upon circumstantial evidence for the Defendant's conviction. Reiterating briefly, these circumstances were that the Defendant and other employees were on strike against the telephone company. The Defendant tried to rent one particular room and when it was not available, rented the adjoining room of the hotel stating that it was for her uncle, Mr. Patrick, who testified that the Defendant was not authorized to rent a room for him. Defendant paid the rent in advance and took the key. The following day she went to the Sixteenth floor in the hotel between 4:00 and 5:00 o'clock and she was seen leaving the hotel the day after that. There was quite a bit of commotion in the hotel due to the fact that negotiations between management and labor on the strike were being conducted in the hotel. The rifle bullets were fired into equipment of the telephone company located on the top of its building and although a subject of great controversy, one of the State's witnesses testified that in his opinion the bullets were fired from the room rented to the Defendant. After the Defendant's arrest, her apartment was searched and the officers seized two rifles, a machine gun and two clips of ammunition. The machine gun was identified as the gun that fired bullets into General Telephone Company's cable on Gandy Bridge on July 25, 1963, but neither the machine gun nor the two rifles were the ones used in firing the bullets into the equipment on the telephone company building.
We consider Defendant's claim that the court erred in denying her motion for directed verdict in the light of the rule that when a defendant moves for a directed verdict he admits all facts in *277 evidence and every favorable conclusion and reasonable inferences favorable to a conviction. If reasonable men may differ as to the existence of facts tending reasonably to prove an ultimate fact or as to inferences to be drawn from conceded facts, the case should be submitted to the jury. When circumstantial evidence is of a conclusive nature and tendency and is consistent with guilt and inconsistent with innocence leading on the whole to a reasonable and moral certainty that the accused and no one else committed the offense, such evidence is sufficient to sustain a conviction. Victor v. State, Fla. 1939, 141 Fla. 508, 193 So. 762. LaMonte v. State, Fla.App. 1962, 145 So.2d 889.
Although the circumstances may be insufficient to prove that the Defendant was the immediate perpetrator of the crime, or to prove that the Defendant was present aiding and abetting at the commission of the crime, nevertheless, we believe the facts are sufficient to sustain the denial of the motion for a directed verdict on the theory that the Defendant aided and abetted in the commission of the crime. The distinctions between principal in the first degree, principal in the second degree and accessory before the fact were eliminated by F.S. Sec. 776.011, F.S.A. Since 1957 under that statute, an accessory before the fact may be indicted or informed against as though he were the principal without alleging the facts by which he aided and abetted or advised and procured the commission of the crime. The statute eliminates the former distinction between principals and accessories before the fact so that now the question of presence at the commission of the crime is immaterial. One charged as the immediate perpetrator of the crime may be convicted upon proof showing that he did aid, abet, counsel, hire or otherwise procure the offense to be committed whether or not actually or constructively present at the commission of the offense because such person is by statute made a principal in the first degree; that is, the same as the immediate perpetrator of the crime. 12 F.L.P. Indictments, Section 33 and Chaudoin v. State, Fla.App. 1960, 118 So.2d 569.
The judgment is reversed and a new trial is awarded the Defendant.
SHANNON, Acting C.J., and McDONALD, PARKER LEE, Associate Judge, concur.