191 So.2d 303 (1966)
Charles LOWE, Alice Johnson, Willie Davis, Mary Jane Wells, and Fannie Mae Mack, Appellants,
v.
The STATE of Florida, Appellee.
No. 64-1064.
District Court of Appeal of Florida. Third District.
November 1, 1966.
Henry R. Carr and Alan B. Oppenheimer, Miami, for appellants.
Earl Faircloth, Atty. Gen. and James T. Carlisle, Asst. Atty. Gen., for appellee.
Before CARROLL and SWANN, JJ., and BOYER, TYRIE A., Associate Judge.
*304 SWANN, Judge.
The appellants, defendants below, were tried by jury and convicted of grand larceny. The parties will be referred to herein as they appeared before the trial court.
The defendants were said to have been in Dion Tire Supply Store in Key West, Florida on May 2, 1964 at about 3:00 P.M. Approximately thirty minutes after they left the store, a television set and several radios were found to be missing. Except for two sales clerks and a customer, the defendants were the only persons to have come into the store during this time. At about 4:15 P.M. the store owner notified the Key West Sheriff's Department that the merchandise was missing, and an investigation was commenced.
The investigating officer, Sgt. Perez, of the Sheriff's Department, was given a description of the missing merchandise, as well as a description of the defendants. The one customer who was in the store advised Sgt. Perez that she had noticed a dark, dusty, late model automobile, occupied by a colored man, on the same block as the tire supply store. Sgt. Perez learned that the suspected car had a Dade County, Florida license tag and obtained a description of the driver of the car and one of the other defendants.
A radio message was sent out from the department at about 5:00 P.M. to all officers to be on lookout for the above described automobile, occupied by numerous colored subjects, in connection with the suspected crime. After receiving this message, Deputy Sheriff Conrady noticed and followed a car fitting this description, with a Dade County license tag, occupied by several Negroes. He stopped the automobile and asked the driver, one of the defendants, for his driver's license.
Sgt. Perez arrived on the scene and the defendants were interrogated as to certain contents which the officers had noticed in the automobile. There is evidence that the defendants submitted to the search of some of the contents and possessions in the automobile by the officers.
The defendants were then advised that they were under arrest for "investigation of larceny," and they were taken to the Sheriff's Office at about 5:30 P.M. They denied ownership of the automobile and claimed that they did not have the key to the trunk. At approximately 5:40 P.M. that day, the rear seat of the automobile was pulled back, revealing the transistor radios and a small television set in the trunk. These were identified as the merchandise taken from the tire supply store.
The defendants moved to suppress the merchandise discovered in the trunk, on the grounds that the facts indicated that the arrest, search and seizure were made without benefit of an arrest warrant, a search warrant, or consent. The trial court overruled the motion to suppress, and the merchandise was admitted into evidence. The defendants were subsequently convicted and this appeal followed.
The defendants first contend that an arrest occurred when the automobile was initially stopped by Deputy Sheriff Conrady, and rely on the case of Henry v. United States, 1959, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134. In that case, the government conceded that the arrest took place with the stopping of the automobile. In the instant case, the State does not concede that an arrest took place upon the stopping of the automobile. The mere stopping of an individual for interrogation by a police officer does not constitute an arrest. See Davis v. People of State of California, 9 Cir.1965, 341 F.2d 982; Hart v. United States, 5 Cir.1963, 316 F.2d 916; Busby v. United States, 9 Cir.1961, 296 F.2d 328; Range v. State, Fla.App. 1963, 156 So.2d 534; City of Miami v. Aronovitz, Fla. 1959, 114 So.2d 784.
The defendants also contend that the arrest, orally announced by Deputy Conrady as an arrest for "investigation of larceny," *305 was improper because there is no such charge, or cause, for arrest, and that there was, furthermore, a complete lack of probable cause for their arrest without a warrant. They rely upon the case of Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.
That case is distinguishable from the instant case, as it is apparent from the record before us that the arresting officers herein did have probable cause to arrest the defendants without an arrest warrant. They had information that a late model, dark, dusty automobile, bearing an out of town license, had been parked in the vicinity of the tire supply store at about the time the theft had occurred. Their information further indicated that a colored man had occupied the parked automobile and that several colored people were suspected of having taken the missing merchandise. A description of the driver of the automobile and one of its occupants had also been received.
Section 901.15, Florida Statutes, F.S.A., provides that a police officer may arrest a person without a warrant when he has reasonable ground to believe that the person to be arrested has committed a felony. We find that the officers in this cause had reasonable ground to believe that a felony had been committed by these persons and were justified in stopping the defendants' automobile. See Pflegl v. State, Fla. 1957, 93 So.2d 75. After stopping the automobile, the defendants consented to an examination of many of the articles discovered in and about the automobile. We conclude that the search of the trunk in this case was made incidental to the arrest, and was not too remote in time or place. See Crawford v. Bannan, 6 Cir.1964, 336 F.2d 505; Dolan v. State, Fla.App. 1966, 185 So.2d 185. A second search of an arrested party made as an incident to a lawful arrest has also been held proper. Dolan v. State, supra; Nixon v. State, Fla.App. 1965, 178 So.2d 620.
For the reasons stated, the judgment of the lower court is therefore
Affirmed.
BOYER, TYRIE A., Associate Judge, (dissenting).
I must respectfully dissent.
The essential facts do not appear to be in dispute. On May 2, 1964 four negroes entered Dion Tire Supply at about 3:00 o'clock P.M. and were observed "around the radios" which were on sale in the store. Approximately 30 minutes after the negroes departed a television set and several radios were discovered to be missing. With the exception of two sales clerks and one Hortense Curry, the four negroes were the only persons in the store at the time. The store owner notified the Sheriffs Department whereupon a Detective Perez was assigned to investigate. He was informed by Hortense Curry that she had seen four negroes in the store, and that after leaving the store she noticed a dark, dusty, late-model Pontiac automobile occupied by a negro man parked on the same block as that occupied by Dion Tire Supply. Detective Perez reported this information to the Sheriffs Department, describing the stolen merchandise. Subsequently, Perez was informed by an officer of the Key West Police Department that he had recently stopped a similarly described vehicle for driving on the wrong side of the street and had noted that the car had a Dade County license. The officer gave Perez a description of the driver of the car and of the other occupants. Armed with this information, and only this information, Deputy Conrady, with the assistance of Detective Perez, stopped a vehicle bearing the general description of that given by Hortense Curry and bearing a Dade County license which was occupied by the defendants who are negroes and driven by the defendant Davis. While standing beside the car, the officers observed inside the car a pillow case with sleeves of suits hanging out and a typewriter case. There *306 is evidence that the defendants voluntarily allowed the officers to examine the pillow case which was found to contain six or eight suits on wooden hangers and the typewriter case which was found to contain a typewriter with a carriage that had not been typed on. None of said articles had been reported stolen. At some juncture, the time is in dispute, the occupants of the vehicle were placed under arrest and were taken to the Sheriff's office.
Upon being requested to deliver up the key to the trunk of the car the defendants denied ownership of the car and stated that they did not have a key to the trunk. Thereafter, at approximately 5:40 P.M., long after the defendants had been arrested, the rear seat of the car was torn out revealing the radios and television, which were identified as the merchandise taken from Dion Tire Supply, and for the theft of which the defendants were tried and convicted.
At the trial the defendants moved to suppress the merchandise discovered in the trunk alleging, inter alia, the search and seizure to have been unreasonable, invalid and unconstitutional. The motion to suppress was overruled and the merchandise was admitted into evidence.
Although I agree with the majority that the officers had reasonable ground to believe that a felony had been committed by the defendants and that the subsequent arrest without a warrant was lawful, I cannot agree that the search and seizure was reasonable. Unquestionably, a search may be made as an incident to a lawful arrest. However, the search must be incident to the arrest and the arrest may not be for the purpose of making the search. As this court stated in Chapman v. State, Fla.App. 1964, 158 So.2d 578:
"An incidental search should be, as the term implies, incidental to the arrest. The primary purpose should be to arrest and the search should be purely incidental to it. An exploratory search is one in which the search is primary and the arrest is used as a pretext to justify the search."
In Prather v. State, Fla.App. 1966, 182 So.2d 273, this court also held:
"Law enforcement officers may not make a valid search by entering a premise ostensibly for the purpose of making an arrest but in reality for the purpose of conducting a general exploratory search for evidence of crime. Such search is unreasonable even though the arrest is supported by probable cause or a valid arrest warrant."
The First District Court of Appeal, in Stanley v. State, Fla.App. 1966, 189 So.2d 898 (opinion filed September 8, 1966), made the following pertinent observations:
"* * * Stanley insists that the utilization of the instant arrest warrant was a subterfuge to gain entrance into his home for the primary purpose of searching same and discovering evidence upon which a conviction could be obtained. We have no difficulty in agreeing with Stanley's contention, and this record leads to the inescapable conclusion that the primary objective of the arrest under the circumstances of this case was the searching of Stanley's home for which a search warrant had not been procured. That Stanley was utilizing his home for illegal purposes has been conclusively proven. However, such is not the test for the reasonableness of the instant search. If we were to sustain this search as being a lawful one, a very possible consequence would be to emasculate the safeguards established by our founding fathers in the federal and state constitutions guaranteeing to the citizens of this state the sanctuary of their homes against raiding parties. * * *" (Emphasis added)
I cannot agree that the search in the case sub judice was incidental to the arrest. The arrest had long since been accomplished, the defendants had been taken into custody and their vehicle impounded. There *307 was ample time to obtain a search warrant, and the removal of the back seat of the automobile for the purpose of gaining entrance to the trunk for the sole purpose of searching same, all without a search warrant was, in my opinion, unreasonable, illegal and unconstitutional.
If citizens are to be expected to obey the laws they have a right to expect the same from the officers charged with the responsibility of enforcement. It is just such conduct as that revealed by the record of this case which breeds such unpopular and unpalatable decisions as Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977, and Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Paraphrasing a portion of the Stanley decision above quoted: That the defendants were guilty has been conclusively proven. However, such is not the test for the reasonableness of the instant search.
I would reverse.