Myron Steven **GODDARD**, Appellant,

v.

**STATE of Wyoming**, Appellee.

No. 3889.

Supreme Court of Wyoming.

Feb. 24, 1971.

W. A. Smith, of Smith & Meyer, Lander, for appellant.

James E. Barrett, Atty. Gen., William L. Kallal, Asst. Atty. Gen., Cheyenne, for appellee.

Before McINTYRE, C. J., and PARKER, McEWAN, and GRAY, JJ.

Chief Justice McINTYRE delivered the opinion of the court.

Myron Steven Goddard was charged, tried and convicted on multiple counts pertaining to the possession of marijuana. One of his assignments of error on appeal is that the trial court erred in refusing his motion prior to trial to suppress evidence seized in a search of defendant's home. Such evidence was also objected to at the time of trial.

If the evidence objected to was in fact obtained through or as a result of an unreasonable search and seizure, the conviction will have to be reversed and it will not be necessary to consider other assignments of error. We therefore look first at the circumstances under which the disputed evidence was obtained.

Considering the evidence in the light most favorable to the state, we find Mr. and Mrs. Paul Brownfield, owners, rented a home to defendant and his brother on a monthly basis, allowing rent for half a month to be paid and with the understanding that the rest would be paid later. When half a month was up, Mr. Brownfield notified defendant to move and agreed with defendant that he and his brother could move the next day.

The next morning Mrs. Brownfield and a daughter went to the house, knocked on the door and determined no one was home. Defendant's motor vehicle was in the driveway. Mrs. Brownfield then called her husband and reported the tenants were still there. The husband called the chief of police; the chief of police called a deputy sheriff; the two officers went to the house and entered with the Brownfields. Inside the house the officers found two small marijuana plants and a few marijuana seeds.

It is admitted the officers had no search warrant at the time of their initial entry. Neither did they have a writ of restitution or other authority for dispossessing defendant and his brother. It is also freely admitted the officers had no reason to suspect that a crime had been committed or was being committed. The only reason given for having defendant under surveillance was the manner in which he wore his hair and the kind of motor vehicle he drove. This would not constitute reasonable cause for entering and searching defendant's home without a warrant.

Even if we consider the tenants' rental time was up when officers entered, there can be no doubt the tenants still actually possessed and occupied the dwelling. The constitutional prohibition we are concerned with is against the search of premises actually possessed or occupied by another. Lawson v. State, 176 Tenn. 457, 143 S.W.2d 716, 717; United States ex rel. Clark v. Maroney, 3 Cir., 339 F.2d 710, 714; Walker v. Pepersack, 4 Cir., 316 F.2d 119, 125; Eng Fung Jem v. United States, 9 Cir., 281 F.2d 803, 805; Manning v. Commonwealth, Ky., 328 S.W.2d 421, 423–424. See also 79 C.J.S. Searches and Seizures § 10, p. 789.

We are aware of the decision in Welch v. Rice, 61 Wyo. 511, 159 P.2d 502, 506, wherein it was held a tenancy by sufferance may be terminated by reentry. It is clear in this case that the owners had not accomplished, by reentry or otherwise, a termination of tenancy when the officers entered. Indeed, the state has not attempted to deny the actual possession of the tenants nor to claim that their tenancy had already been terminated by a prior reentry. Even at the time of the officers' first entry and search no attempt was made to remove any of the possessions of the tenants.

Without deciding whether the defendant and his brother were tenants at sufferance when the officers first entered and searched, it suffices to repeat that defendant and his brother still actually possessed and occupied the premises. The authorities already cited make it clear that is the critical question.

A home is entitled to special dignity and special sanctity, and the proper way to search a home is to obtain a search warrant. Holt v. State, 17 Wis.2d 468, 117 N.W.2d 626, 631. The Fourth Amendment was specifically designed to prohibit seizure of evidence in a defendant's home where there is no court order or warrant. People v. Kaigler, 368 Mich. 281, 118 N.W.2d 406, 410. And the Fourth Amendment imposes more stringent requirements for warrant where the object of the search is stationary rather than movable. People v. Salerno, 38 Misc.2d 467, 235 N.Y.S.2d 879, 884.

In Gilkison v. State, Wyo., 404 P.2d 755, 757–758, we gave recognition to the distinction that has always been observed between a home and vehicles. We specifically said, while we would agree it has always been assumed one's house cannot be searched without a search warrant, except as incident to a lawful arrest at the house, it must be borne in mind, where dealing with a motor vehicle, that before a warrant could be secured a vehicle would be beyond the reach of an officer. Of course, in the case now under consideration, we are not dealing with a vehicle but with a home.

As stated in Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 682–683, 5 L. Ed.2d 734, 97 A.L.R.2d 1277, Fourth Amendment rights are not measured in terms of ancient niceties of tort or real property law. In the same case it was said, at the very core of a man's personal rights stands the right to retreat into his own home and there be free from unreasonable governmental intrusion.

It was also said in Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 370, 92 L.Ed. 436, an officer gaining access to private living quarters under color of office and of the law which he personifies must have some valid basis in law for the intrusion.

The Supreme Court of Utah, in State v. Kent, 20 Utah 2d 1, 432 P.2d 64, 65–66, held whether there has been an intrusion into a constitutionally protected area of right to privacy is not to be determined by simply considering whether there has been a trespass according to local property laws. It said leased and rented premises come under protection of the Fourth Amendment. The Court also said consent of a landlord or hotel or motel manager would not be sufficient to justify an officer to make a search of a tenant's premises without a warrant.[1]

After the officers entered the Goddard home and discovered the two marijuana plants and the seeds we have spoken of, they went to a justice of the peace and obtained a search warrant. They then returned and seized the evidence in question. The subsequent warrant, however, did not improve matters for the officers. We held in Gilkison v. State, Wyo., 404 P.2d 755, 759, if the initial search is held improper, not only the evidence obtained by such search but everything which becomes accessible to the prosecution by reason of the initial search would be inadmissible as "a fruit of the poisonous tree." Our authority for such holding was Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307; and Annotation 50 A.L.R.2d 531, 569.

The defendant's motion to suppress the evidence obtained in the original search, or as a result of the information obtained through such search, should have been allowed. We find no other substantial evidence of defendant's guilt in the record before us. Therefore, the defendant must be discharged.

Reversed with instructions to discharge defendant and to dismiss the charges against him.

Mr. Justice PARKER (dissenting).

Protection from unreasonable searches and seizures is one of the cornerstones upon which our Nation was founded and should remain inviolate. However, such protection must be judicially applied not by the mere pronouncements of maxims, bolstered by inapposite precedent but rather by careful analysis of the facts relating to each claimed violation. Anything less dilutes and vitiates the very rights which we are seeking to preserve. The principal opinion here has mentioned only peripherally the single point which in all justice

---

1. For other cases which hold generally to the same effect, see Prather v. State, Fla.App., 182 So.2d 273, 275–276; People v. McDonald, 51 Ill.App.2d 316, 200 N.E.2d 369; Reeves v. Warden, Maryland Penitentiary, 4 Cir., 346 F.2d 915, 924–925; Manning v. Commonwealth, Ky., 328 S.W.2d 421, 423–424; and Gross v. State, 235 Md. 429, 201 A.2d 808, 816.

must control the decision, that is, the legal status of defendant as a tenant by sufferance or otherwise. Defendant refrained from testifying or calling any witness on his behalf as, of course, he had a right to do, but by such abstention he must accept the undisputed testimony which was presented to the jury. There was no contradiction of Mrs. Brownfield, one of the owners, when she recited the circumstances regarding the rental of the property, that on October 22, 1968:

"Steve [the defendant] came down and he asked to rent it and I said yes, that I would let him have it, and he said his brother would be moving in with him and he could only pay half of the rent at the time and that he would pay the other full month later."

Likewise there was no refutation of Mr. Brownfield's testimony that on November 6, the fifteenth day after his wife's conversation with defendant:

" * * * I told him that I wanted them to move and he said that they would have the rent for me. And I said that I didn't want the rent, that I wanted them to vacate the house. And they said they was paying me good money. And I said well, I still didn't want them there, and I asked them to vacate. He wanted to know if he should move that night. And I said well, you could wait until morning. And I asked them to clean the house up when they left, and they said they wouldn't do it. And that was the

reason that Dolly went down the next morning."

Under such circumstances there would seem no valid basis for contention that defendant was more than a tenant at sufferance under the provisions of § 34–60, W. S.1957. No case cited in the principal opinion deals with a similar situation. However, under our holding in Welch v. Rice, 61 Wyo. 511, 159 P.2d 502, the Brownfields had a right to enter the house in question without legal process and the fact that they elected to secure an officer to accompany them did not alter the situation. Although the prevailing opinion attempts to distinguish Welch v. Rice, supra, by saying "It is clear in this case that the owners had not accomplished, by reentry or otherwise, a termination of tenancy when the officers entered [with them]," [1] the oral lease here for the two weeks had expired, the subsequent month's rent had not been paid, and while the tenants had indicated orally they would pay it, they had been told to vacate and had unequivocally agreed to do so. When entry was effected at about 10 a. m., November 7, through the unlocked front door, after there was no response to Mr. Brownfield's knock, and marijuana was clearly visible, no search was made by any person until a search warrant had been secured. Nothing has been presented by defendant which convinces me that the evidence then seized was not admissible at the trial. As to other points raised in this appeal, a careful examination of the record discloses no reversible error. I would, therefore, affirm.

1. Mr. Brownfield testified that when his wife went to the property which was to have been vacated by the tenants she observed their motor vehicle parked there, believed therefore they might be present in the house, and telephoned her husband. Mr. Brownfield said he telephoned his attorney and was advised to take a disinterested person into the house with him. He then called a police officer, who was a friend, asking him to come to the house and witness the removal of the tenants' belongings from the rental property.