2007 WY 138

**Tracy HALL, Appellant (Defendant),**

v.

**The STATE of Wyoming,
Appellee (Plaintiff).**

No. 06–230.

Supreme Court of Wyoming.

Aug. 28, 2007.

Representing Appellant: D. Terry Rogers,
Interim State Public Defender; and Tina N.
Kerin, Post–Conviction Counsel. Argument
by Ms. Kerin.

Representing Appellee: Patrick J. Crank, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; and Melissa M. Swearingen, Senior Assistant Attorney General *. Argument by Mr. Armitage.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Appellant, Tracy Hall, entered a conditional guilty plea (contingent on the outcome of this appeal) to a single felony count of possession of methamphetamine under Wyo. Stat. Ann. § 35-7-1031 (Michie Supp. 1998). She contests the district court's denial of her pretrial motion to suppress certain evidence.

## ISSUE

[¶ 2] Did the district court abuse its discretion when it refused to suppress drugs confiscated from Appellant during a pat-down search preceding her incarceration in the county jail, where Appellant was arrested pursuant to a legitimate traffic stop, but where the officer's first observation of Appellant was precipitated by knowledge gained from a wiretap later discovered to be illegal?

## FACTS[1]

[¶ 3] In 1998, federal, state, and local law enforcement agencies were involved in an undercover drug operation involving multiple wiretaps and other monitoring activities. It was later discovered that the Wyoming Communication Interception Act, Wyo. Stat. Ann. §§ 7-3-601 through 7-3-611 (LexisNexis 2000) (repealed 2001), the statutes under which the wiretaps used in the investigation were authorized, had expired long before the investigation began,[2] rendering those wiretaps illegal. On November 13, 1998, a female named Tracy (Appellant's first name) called

one of the monitored phone numbers and arranged to purchase methamphetamine from one of the suspects being watched by law enforcement. Law enforcement officers observed Appellant's car arrive at the location agreed upon for the purchase. The suspect, who had earlier agreed to sell "Tracy" drugs on the phone, entered the car. A few moments later, the suspect exited the car and Appellant drove away. Officers in charge of the operation contacted Casper police officer Weischedel and requested that he identify the driver of the vehicle, believed to be a female named Tracy.

[¶ 4] Officer Weischedel followed Appellant's vehicle and ran her plates for information. Upon being informed that the plates on the Appellant's truck did not match the vehicle, the officer pulled Appellant over and requested her license, registration, and proof of insurance. Appellant was unable to produce proof of insurance on the vehicle she was driving, and her driver's license was under suspension. Officer Weischedel followed department procedure and arrested Appellant for driving under a suspended license. Appellant was transported to the detention center and patted down during booking. A bag containing methamphetamine was found in her sock. Appellant was charged with possession of methamphetamine and pled guilty. She was sentenced to 36-60 months in prison, and completed her sentence, serving a combination of probation, incarceration, and parole. In 2001, Appellant filed a petition for post-conviction relief based on the discovery that the wiretap under which her call was intercepted was illegal. In 2005, that petition was granted and Appellant was allowed to withdraw her 1999 guilty plea. She sought suppression of the drugs discovered on her person pursuant to her arrest, but her motion to suppress was denied. Appellant then pled guilty again, conditional on the outcome of this timely

---

* Order Granting Motion to Withdraw entered February 7, 2007.

1. The parties stipulated to the relevant facts at the district court level.

2. Apparently the Act had a sunset date of July 1, 1995, which was omitted in the original publica-

tion. This oversight resulted in continued publication and use of the Act through 2000, when the omission was finally discovered. The Act was reauthorized in 2001, but the wiretap authorizations granted in the interim were obtained without statutory authority.

appeal of the district court's denial of her motion to suppress.

## STANDARD OF REVIEW

[¶ 5] In general, evidentiary rulings of a district court are not disturbed on appeal unless a clear abuse of discretion is demonstrated.... Since the district court conducts the hearing on the motion to suppress and has the opportunity to: assess the credibility of the witnesses; the weight given the evidence; and make the necessary inferences, deductions and conclusions, evidence is viewed in the light most favorable to the district court's determination.

*Wilson v. State*, 874 P.2d 215, 218 (Wyo.1994) (citation omitted). "We will not disturb the factual findings of a district court in determining a motion to suppress unless the findings are clearly erroneous." *Fertig v. State*, 2006 WY 148, ¶ 8, 146 P.3d 492, 495 (Wyo. 2006) (citation omitted).

## DISCUSSION

[¶ 6] Both parties agree that the original wiretap in this case was illegal. There is also no debate as to the propriety of the search conducted on Appellant at the detention facility. The sole question here relates to the applicability of the fruit of the poisonous tree doctrine and the exclusionary rule to these facts.

[¶ 7] When law enforcement obtains evidence through unlawful search or seizure, that evidence is inadmissible against the victim of the unlawful action. *Wong Sun v. United States*, 371 U.S. 471, 484, 83 S.Ct. 407, 416, 9 L.Ed.2d 441 (1963). This long-standing remedy for the accused is necessary to give effect to the fundamental protections against unreasonable search and seizure. *Id.* "[I]f the initial search is held improper, not only the evidence obtained by such search but everything which becomes accessible to the prosecution by reason of the initial search would be inadmissible as 'a fruit of the poisonous tree.'" *Brown v. State*, 738 P.2d 1092, 1097 (Wyo.1987) (quoting *Goddard v. State*, 481 P.2d 343, 345 (Wyo.1971)). However, "this does not mean that the facts thus obtained become sacred and inaccessible." *Wong Sun*, 371 U.S. at 485, 83 S.Ct. at 416.

We need not hold that all evidence is "fruit of the poisonous tree" simply because it would not have come to light but for the illegal actions of the police. Rather, the more apt question in such a case is "whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint."

*Id.* at 487–88, 83 S.Ct. at 417 (citation omitted).

"[T]he derivative taint of illegal activity does not extend to the ends of the earth but only until it is dissipated by an intervening event." *United States v. Giordano*, 416 U.S. 505, 554, 94 S.Ct. 1820, 1845, 40 L.Ed.2d 341 (1974) (Powell, J., concurring in part and dissenting in part).

[¶ 8] In *Segura v. United States*, 468 U.S. 796, 104 S.Ct. 3380, 82 L.Ed.2d 599 (1984), the United States Supreme Court found that the operative question was "whether the challenged evidence was 'come at by exploitation of [the initial] illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* at 804–05, 104 S.Ct. at 3385 (quoting *Wong Sun*, 371 U.S. at 488, 83 S.Ct. at 417). Segura involved an improper warrantless entry followed by a second entry supported by a warrant. *Id.* at 799, 104 S.Ct. at 3382. In order to determine whether the warrant was tainted by the illegal entry, the Court analyzed the warrant and found that "[n]o information obtained during the initial entry or occupation of the apartment was needed or used by the agents to secure the warrant" and that the evidence in question "was the product of that search, wholly unrelated to the prior entry." *Id.* at 814, 104 S.Ct. at 3390.

[¶ 9] In Appellant's case, the trial court excluded all evidence directly related to the wiretap, including any photographs, video, and voice recordings of the Appellant that existed because of the illegal monitoring. The court determined that those items were

obtained as a direct result of the illegal wiretap and, as such, were fruit of the poisonous tree. The only evidence at issue here is the drug evidence found on Appellant's person during her booking for driving under suspension. It is true that the officer was in the area where the traffic stop occurred on specific instructions to observe Appellant based on information gained through an illegal wiretap. However, eliminating any information connected to the tainted wiretap, the officer still had probable cause to perform the traffic stop because he observed the violation. Therefore, the traffic stop and booking pat-down were sufficiently separate from the original wiretap to obviate the use of the exclusionary rule in this situation.

[¶ 10]   Appellant was in violation of the law. The truck she was driving did not have valid plates. The officer had the clear right to be where he was (on a public street) when he observed that violation. He acted appropriately and according to protocol by pulling Appellant over, and by arresting her when he discovered she was driving with a suspended license. Nothing in the record suggests he lacked probable cause for that stop. He then followed the standard procedure by taking Appellant to the jail, where she was processed and booked as normal. The fact that the officer's initial observation of Appellant was motivated by information garnered through an illegal wiretap does not change the fact that the evidence at issue was properly gathered during a stop and arrest fully supported by probable cause. This evidence, unlike the excluded evidence related to the drug sting, was a product of the traffic stop and subsequent pat-down booking search. As such, it need not be excluded as fruit of the poisonous tree.

[¶ 11]   Even were it possible to apply the exclusionary rule to this evidence, there would be very little incentive for a court to do so under these facts. The purpose of the exclusionary rule is to deter law enforcement from obtaining evidence through illegal means. *Wong Sun,* 371 U.S. at 485–86, 83 S.Ct. at 416. However, the public has a vital "interest in prosecuting those accused of crime and having them acquitted or convicted on the basis of all the evidence which exposes the truth." *United*

*States v. Ceccolini,* 435 U.S. 268, 276, 98 S.Ct. 1054, 1060, 55 L.Ed.2d 268 (1978) (quoting *Alderman v. United States,* 394 U.S. 165, 174–75, 89 S.Ct. 961, 967, 22 L.Ed.2d 176 (1969)). "[A]pplication of the rule has been restricted to those areas where its remedial objectives are thought most efficaciously served." *Ceccolini,* 435 U.S. at 275, 98 S.Ct. at 1060 (quoting *United States v. Calandra,* 414 U.S. 338, 348, 94 S.Ct. 613, 620, 38 L.Ed.2d 561 (1974)). "The penalties visited upon the Government, and in turn upon the public because its officers have violated the law, must bear some relation to the purposes which the law is to serve." *Ceccolini,* 435 U.S. at 279, 98 S.Ct at 1061–62.

[¶ 12]   Application of the exclusionary rule and extension of the fruit of the poisonous tree doctrine would serve no purpose here. Law enforcement officers believed they were working pursuant to a valid, statutorily authorized wiretap. As the 10th Circuit Court of Appeals stated when it rejected a claim based on ineffective assistance of counsel for failure to notice the expiration of the wiretapping statute, "the Wyoming Attorney General's Office, several state district court judges, the Wyoming Supreme Court, the United States District Court for the District of Wyoming, dozens of defense attorneys, the Wyoming Legislature, the United States Attorney's Office, and the Natrona County District Attorney's Office also failed to notice the expiration of the statute." *United States v. Salazar,* 323 F.3d 852, 857 (10th Cir.Wyo. 2003) (quotation marks omitted). We fail to see how law enforcement can be deterred from inadvertent illegal behavior.

## CONCLUSION

[¶ 13]   The district court did not abuse its discretion in denying Appellant's motion to suppress evidence collected during her arrest for driving under suspension even though she was initially placed under surveillance because of information gained through use of a wiretap that law enforcement officers later discovered to be illegal.

[¶ 14]   Affirmed.